JOHN REINING et al., Respondents, *v.* THE NEW YORK, LACKA-
WANNA AND WESTERN RAILWAY COMPANY, Appellant.

Owners of lots abutting on a city street, the fee of which is in the municipality for street uses, although they have no title to the soil, are entitled to the benefit of the street in front of their premises for access and other purposes, and cannot be deprived thereof without compensation.

The right of such owners is not so absolute in its character that they can resist or prevent any and all interference with the street, to their detriment; nor can they assert it to stay the municipality in the control, regulation or improvement of the streets in the public interests, although it may be made to appear that the privileges said owners had enjoyed and the benefits they had derived from the street would be curtailed or impaired, to their injury, by the changes proposed.

As against abutting owners, having no title to the bed of a city street, it is competent for the legislature to authorize the construction of a horse or steam surface railroad therein, without making compensation to them for consequential damages, arising from a reasonable use of the street for purposes of such a railroad, not exclusive in its nature, and when the road is substantially on the same grade as the street itself and passage across and through the same is left free and unobstructed for the public use.

| | |
|---|---|
| 128 | 157 |
| 128 | 623 |
| 128 | 157 |
| 130 | 115 |
| 128 | 157 |
| 136 | 531 |
| 128 | 157 |
| 143 | 140 |
| 128 | 157 |
| 151 | 161 |
| 128 | 157 |
| 154 | 560 |
| 128 | 157 |
| d156 | 488 |
| 128 | 157 |
| 169[10] | 80 |
| 169 | [3]284 |
| 169 | [3]286 |
| 128 | 157 |
| 170 | [3]306 |
| 128 | 157 |
| 173 | [7]555 |
| j173 | [7]563 |

Where, however, the street is practically and substantially closed against such owners for ordinary street uses, they are entitled to compensation.

Where a charter of a city confers upon its common council power to permit the track of a railroad to be laid in, along or across any street or public ground, this must be construed as subject to the qualification that no property rights of abutting owners are thereby invaded.

*It seems* the primary object of the power to alter the grade of streets, conferred upon common councils in municipal charters, is to enable the municipal authorities to render a street more safe and convenient for public travel, to afford drainage and to adapt the street more perfectly for the purposes of a public way.

A municipality cannot, under the guise of exercising such power, appropriate a part of a street practically to the exclusive use of a railroad company and cut off abutting owners, without compensation, from using any part of it in the accustomed way.

Prior to 1875 plaintiffs owned certain premises on W. street in the city of Buffalo, their title extending to the centre of the street, subject to the public easement. In that year said city acquired by condemnation the title to a large number of its streets, including W. street, a uniform and nominal award of damages being paid to each of the owners, including plaintiffs. The city charter confers upon its common council power to alter the grade of streets and to "permit the track of a railroad to be laid in, along or across any street or public ground." (Laws 1870, chap. 519, tit. 9, §§ 1, 2, 6; tit. 3, § 19.) In 1882 said common council granted to defendant, a steam railroad corporation, the right to construct and maintain two tracks along the centre of W. street. In pursuance thereof and in accordance with the map and profile approved by said council and under the direction of the city engineer, defendant built an embankment in W. street in front of plaintiffs' premises, supported laterally by perpendicular stone walls, which practically excluded all abutting owners from that part of the street thus occupied, and so interfered with the use of the street as to cause the rental value of plaintiffs' premises to depreciate. *Held*, that an action was maintainable to recover damages for such depreciation.

*Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505); *Ottenot* v. *N. Y., L. & W. R. Co.* (119 id. 603), distinguished.

Also *held*, that the action of the common council in authorizing the construction of the embankment was not a change of grade within the meaning of the charter, and, therefore, the provision of the charter that "when the city shall alter the recorded grade of any street or alley, the owner of any house or lot fronting thereon may, within one year thereafter, claim damages by reason of such alteration" (Tit. 9, § 17), did not apply so as to confine the plaintiffs to a remedy against the city.

Also *held*, that while the authority conferred by the General Railroad Act (Chap. 140, Laws of 1850, § 24) upon railroad corporations to cross high-

ways in the construction of their lines, authorizes their construction on, over or below the highway grade, and so, to make such incidental changes of the grade as may be rendered necessary, without giving a right of action to abutting owners who sustain injury, the change here made did not come within that authority.

(Argued May 5, 1891; decided October 6, 1891.)

Appeal from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made January 29, 1891, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John G. Milburn* for appellant. The defendant is not liable in this action for any diminution of the value of the use of the plaintiffs' premises caused by the raising of the grade of a portion of Water street, and the construction and operation of its railroad thereon. (*Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; Laws of 1870, chap. 519, tit. 9, § 17; *Conklin* v. *R. Co.*, 102 N. Y. 107; *White's Bank* v. *Nichols*, 64 id. 65; *English* v. *Brennan*, 60 id. 609; *Ins. Co.* v. *Stevens*, 87 id. 292; Laws of 1834, chap. 276, § 17; Laws of 1870, chap. 519, § 19; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *O'Connor* v. *Pittsburgh*, 18 Penn. St. 187; *Heiser* v. *City of New York*, 104 N. Y. 68; *Briggs* v. *R. R. Co.*, 79 Me. 363; *Wolfe* v. *R. R. Co.*, 15 B. Mon. 404; *Slatten* v. *R. R. Co.*, 29 Ia. 148; Pierce on Railroads, 246–248; *Bellinger* v. *R. Co.*, 23 N. Y. 42; *Uline* v. *R. Co.*, 101 id. 98; *Kane* v. *N. Y. E. R. Co.*, 125 id. 164; *B. P. Comrs.* v. *Armstrong*, 45 id. 234; *Lansing* v. *Smith*, 8 Cow. 146; *Story* v. *M. E. R. Co.*, 90 N. Y. 122; *Lahr* v. *M. E. R. Co.*, 104 id. 268.)

*David F. Day* for respondent.

Andrews, J. The principal question in this case respects the rights of the plaintiffs as abutting owners, to recover damages occasioned by the construction of the defendant's road in Water street in the city of Buffalo. The plaintiffs' premises are situated on the northerly side of Water street and are

bounded easterly by Commercial street, westerly by Maiden Lane, and southerly by Water street, and occupying the whole lot is a four-story brick building used as a store and residence, constructed before the railroad was placed in Water street. Water street runs easterly and westerly and has existed for more than forty years. Up to 1875, the plaintiffs owned the fee to the center of the street opposite their premises, subject to the public easement. In that year proceedings were taken by the city of Buffalo to acquire the title to a large number of streets in Buffalo, including Water street, by condemnation, and resulted in the city acquiring the title, upon payment of a uniform and nominal award of five cents damages to each of several hundred owners of lots on the streets taken including the plaintiffs.

In 1882, the common council of the city of Buffalo by ordinance granted to the defendant the right to construct and maintain two railroad tracks " along Prince street to a point midway between Hanover street and Lloyd street, thence across Lloyd street at such grade as will permit said company with a practical construction to cross Commercial street at the height fixed by the state engineer; thence to and along the center of Water street to the docks of the Delaware, Lackawanna and Western Railroad Company at the foot of Erie street." Commercial slip is a part of the Erie canal and separates Prince street and Water street, and together they form a continuous street except as it is interrupted by Commercial slip. The defendant in pursuance of the permission of the common council, and in accordance with the map and profile approved by the council, and under the direction of the city engineer, proceeded to raise the grade on Prince street so as to enable the company to cross Commercial slip by a bridge fourteen feet above the water line, the height fixed by the state engineer, and to meet this grade of the bridge constructed an embankment in the center of Water street from the bridge easterly for the distance of 300 feet, passing the plaintiff's premises. Water street is sixty-six feet wide. The sidewalk on the Water street side of the plaintiffs' lot occupies fourteen feet. The embankment of the defendant is twenty-four feet wide, and at the junction of Water and Commercial streets (at the corner of

which is the plaintiffs' lot), it is five feet, nine inches high and from that point descends westerly by a gradual descent passing the plaintiffs' lot and across Maiden Lane and reaches the original level of the street nearly 300 feet west of the corner of Commercial and Water streets. The embankment is supported laterally by solid, perpendicular stone walls, which extend along Water street in front of the plaintiffs' lot and across the entrance of Maiden Lane. Between the perpendicular stone wall on the northerly side of the embankment and the sidewalk in front of the plaintiffs' building is a space eight to nine feet wide, which is the only carriage-way left on the Water street side of the plaintiffs' premises. Commercial street extends northerly and southerly from Main street to Buffalo harbor. The raising of the embankment in Water street rendered it necessary to make an embankment in Commercial street to meet the grade of the railroad, and this was done by the defendant. The defendant paved the surface of the twenty-four feet strip in Water street occupied by its embankment, and laid thereon part of the way one track, and part of the way two tracks for the accommodation of its business. Carriages or teams cannot cross Water street in front of plaintiffs' premises. This is prevented by the embankment. Access to their premises on the Water street side from Commercial street south of Water street is also prevented except by first crossing Water street, and then passing along the embankment on Commercial street 130 feet, and then turning into the road-way on Commercial street between the embankment in that street and the sidewalk, and thence into Water street, or else, when reaching the junction of Commercial and Water streets by turning west and driving down the embankment along the railroad tracks about 300 feet to the end of the grade, and then turning and going easterly along the narrow road-way 8 or 9 feet wide on the northerly side of the embankment. This space is not sufficient to allow wagons to pass each other, nor can a single wagon with horses be turned around in this space except with difficulty.

It was conceded that the plaintiffs, up to the time of the trial, had sustained damages in the diminished rental value of

their premises by reason of the embankment( in the sum of $525, for which sum a verdict was rendered, and no question now arises as to the rule of damages or the amount, provided, upon the facts, damages are legally recoverable.

The counsel for the defendant rests his claim that the judgment should be reversed upon two grounds, *first*, that the laying of tracks for the running of cars by steam on the grade of a city street, and the operation of trains thereon under legislative and municipal authority where the fee of the soil is in the municipality, violates no property rights of an abutting owner, and consequently, in the absence of a special statute authorizing compensation, he is without remedy, although his property may be injured ; and, *second*, that the erection of the embankment to accommodate the street to the use of the defendant was merely a change of grade, which it was competent for the city to authorize in its discretion, and that such change of grade, although it damaged the plaintiffs' property, was within the case of *Radcliff's Ex'rs* v. *Mayor*, etc. (4 N. Y. 195) *damnum absque injuria*. The tracks, it is said, were placed on the new grade, and, therefore, on the surface of the street, and the case, it is claimed, is not distinguishable in principle from what it would have been if, without any change of grade, the tracks had been laid on the original surface of the street. There is a third subordinate defense insisted upon, viz. : That the charter of Buffalo gives a special remedy for injuries to lot owners from a change of grade of streets, and that this remedy is exclusive, and was the only one open to the plaintiffs.

The first proposition is sustained by our recent decision in *Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505). Prior to that decision it had been decided in *People* v. *Kerr* (27 N. Y. 188) and in *Kellinger* v. *42d Street & G. S. F. R. R. Co.* (50 id. 206), which followed it, that the laying of horse railroad tracks in the streets of the city of New York, the fee of which was in the city, was consistent with their use as public, open streets, and with the trust upon which the streets were held, and that abutting owners had no remedy for any consequential injuries they might sustain from the construction and operation under

legislative authority of a horse railroad in the street in the absence of any negligence. The case of *Williams* v. *N. Y. C. R. R. Co.* (16 N. Y. 97) was that of a steam railroad over lands previously dedicated by the owner for a street, where he retained the fee, and it was held that such a use was not within the scope of the dedication, and that the legislature could not authorize such use except on condition of making compensation to the owner of the fee. The same doctrine was applied under similar circumstances to the case of a horse railroad in *Craig* v. *Rochester City & B. R. R. Co.* (39 N. Y. 404). These latter cases, as will be observed, decide that neither a horse nor steam railroad can be authorized in streets, the fee of which is in the adjacent owner, without his consent, while the former cases hold that where the fee is in the municipality, horse railroads may be authorised against the will of the abutting owner and without making compensation. The distinction is made to rest on the location of the fee.

The case of *Fobes* v. *R., W. & O. R. R. Co.* (*supra*), presented the distinct question whether the construction of a steam surface railroad, part of a long line of railroad, on the ordinary grade of a street, under legislative authority, subjected the company to liability for consequential injuries to the lot of an abutting owner whose lot was bounded by the side of the street, and who had no title to the soil therein. It was urged on behalf of the plaintiff that the cases relating to horse railroads were not applicable by reason of their different purpose, such railroads being primarily designed for street traffic, and steam railroads such as that then in question, for ordinary railroad traffic, and also that the one by reason of the different motor, imposed a different and increased burden on the street from that imposed by the other, and interfered to a much greater extent with the enjoyment of the street by abutting owners. The opinion of Judge PECKHAM in that case contains a careful review of the street railway cases in this state, both in this court and the Supreme Court, and it was held that it had become the settled doctrine of our courts that, as against abutting owners having no title to the bed of the street, it was competent for the legislature to authorize the

construction of a steam surface railroad therein, without mak-
ing compensation to the owners of the abutting property
injured by such construction, and that there was no legal dis-
tinction between the case of a railroad operated by horses and
one operated by steam power, and the court reversed the judg-
ments below in favor of the plaintiff.    The court in its opinion
distinctly limits the doctrine to cases where the railroad is laid
on the same grade as the street, leaving the street substantially
free and unobstructed for ordinary travel.    The learned judge,
after referring to the law as established in this state on the
subject, says : " The company was, therefore, not liable to such
an owner for any consequential damages arising from a reason-
able use of the street for railroad purposes, not exclusive in its
nature, and substantially on the same grade as the street itself,
and leaving the passage across and through the same free and
unobstructed for the public use."    And again, speaking of the
cases of a steam and horse railroad, he says : " If the use of either
becomes unreasonable, excessive, or exclusive, or such as would
not leave the passage of the street substantially free and unob-
structed, then such excessive, improper or unreasonable use
would be enjoined, and the adjoining owner would be entitled
to recover damages sustained bv him therefrom in his means
of access, etc., to his land."

It is no longer open to debate in this state that owners of
lots abutting on a city street, the fee of which is in the munici-
pality for street uses, although they have no title to the soil,
are nevertheless entitled to the benefit of the street in front of
their premises for access and other purposes, of which they
cannot be deprived except upon compensation.    The right of
abutting owners in the streets is not, however, of that absolute
character that they can resist or prevent any and all interfer-
ence with the street to their detriment, or which can be asserted
to stay the hand of the municipality in the control, regulation
or improvement of the streets in the public interest although
it may be made to appear that the privileges which they had
theretofore enjoyed, and the benefits they had derived from
the street in its existing condition, would be curtailed or
impaired to their injury by the changes proposed.

The cases of change of grade furnish apposite illustrations. They proceed on the ground that individual interests in streets are subordinate to public interests, and that a lot owner, although he may have built upon and improved his property with a view to the existing and established grade of the street, and relying upon its continuance, has no legal redress for any injury to his property, however serious, caused by a change of grade, provided only that the change is made under lawful authority. This, it is held, is not a taking of the abutting owner's property, and the injury requires no compensation. The hardships arising from the application of this rule of law has led to constitutional amendments in many of the states, providing for compensation for property damaged as well as taken in the prosecution of public improvements. The general rule in this state is unchanged, but the act, chap. 113 of the Laws of 1883, and provisions in some city charters, afford similar relief in certain cases. But that there is a limitation to public powers over the streets of a city, which cannot be transgressed without invading the constitutional rights of abutting owners, was a principle announced in the *Story* case (90 N. Y. 122), and confirmed and broadened so as to apply to other circumstances in the subsequent cases. The elevated railroad structure, the subject of complaint in the *Story* case, occupied with its supports and stair-ways, portions of the street, and such occupation was necessarily exclusive, and this fact was prominently brought into view in the opinions delivered. The parts of the street so occupied could not be used for general street purposes. This fact, it is claimed, distinguishes the present case from that, and it is insisted that this case is more nearly allied to the *Fobes* case than to that of *Story*. It is true that the part of the street occupied by the embankment of the defendant is still a part of Water street. It is also true that the occupation of the embankment by the tracks of the defendant was not necessarily exclusive, that is to say, it is possible for ordinary vehicles to traverse the embankment longitudinally, but such travel would subject the traveler to the risk of meeting railway trains on the narrow causeway and he would have no opportunity to turn off the embankment, except by

driving over the perpendicular wall which supports it. The plaintiffs are practically excluded from the use of that portion of the street by the presence of the railroad there. They and their customers cannot drive across it, and if they had the temerity to drive along it, nevertheless they would be compelled to make a long circuit to reach the plaintiffs' premises from the streets south of the embankment. The only practicable roadway in front on Water street is but a few feet in width, quite insufficient for a safe and convenient way to and from their lot.

We think the public cannot justly demand such a sacrifice of private interests, or justify such an appropriation of a street by a municipality in aid of a railroad enterprise. The *Fobes* case gives no countenance to the defendant's contention. The limitations upon legislative and municipal authority, so carefully stated in the passages quoted from the opinion, are distinctly opposed to such an assumption. That case and those of *Kerr* and *Kellinger*, were cases of railroad tracks laid upon the general grade of city streets, as such grade existed when the tracks were authorized. There was no exclusive appropriation in fact of any portion of the surface by the companies, except that the rails were embedded in the soil. The whole street in each of these cases remained opened and unobstructed, except that the existence of the tracks and the operation of the respective roads thereon rendered access to the lots of the abutting owners somewhat less safe and convenient than before. Here, as the evidence tends to show, the city of Buffalo, for the convenience and presumably upon the application of the defendant, devoted the center of Water street to what is practically the exclusive use of the defendant, leaving for the use of the plaintiffs a narrow and inconvenient roadway, separated from the center of the street by a barrier therein, impassable for carriages from north to south, opposite the plaintiffs' lot on Water street, and only theoretically open from east to west, and then only by a circuitous route. It is quite probable that the general interests of Buffalo and of the larger public are promoted by this appropriation of the street, but it by no means follows that a lot owner whose property is injured should bear the loss for the public benefit. We think

the case falls within the principle of the *Story* case, and that
while the law now is that it is competent for the legislature to
authorize railroad tracks, either for steam or horse railroads,
to be laid on the ordinary grade of streets, the fee of which
is in the state or municipality, without making compensation
to abutting owners for consequential injuries to their property,
the legislature cannot legally authorize structures for railroad
purposes to be erected therein for the use and convenience of
railroads, which practically exclude the abutting owners from
the part of the street so occupied, without compensating them
for the injury suffered, and that it is not necessary that there
should be an actual physical exclusion of the lot owners from
the use of that part of the street occupied by such structures
in order to entitle them to a legal remedy. It is enough if
such part of the street is practically and substantially closed
against them for ordinary street uses.

The power conferred by the charter of Buffalo upon the
common council to " permit the track of a railroad to be laid
in, along or across any street or public ground " (Laws 1870,
chap. 519, tit. 3, § 19), must be construed as subject to the
qualification that no property rights of abutting owners are
thereby invaded. The present controversy could not have
arisen prior to 1875, when the plaintiffs were owners of the
fee to the center of Water street. They would then, under
the settled law, have been entitled to compensation. The city
of Buffalo having in that year acquired, for a nominal con-
sideration, the technical fee in the street, proceeded afterwards
to authorize the laying of the tracks in question, and it is now
claimed that this change in the title defeats the plaintiffs' right
to compensation. This is probably true, if what has been
done by the defendant under license of the city was simply the
laying of its tracks on the surface of the street at its ordinary
grade, but this was not the character of the change effected.

The second proposition of the counsel of the defendant that
the building of the embankment was a mere change of grade
of Water street, made under the authority of the city, is, we
think, untenable. The charter of Buffalo gives plenary power
to the city to fix and change the grade of streets by formal

proceedings, and provides that when a grade is established or altered, a description of such grade shall be made and recorded by the city clerk. (Charter 1870, tit. 9, §§ 1, 2, 6.) The action of the common council granting permission to the defendant to occupy Water street, while it involved as a consequence, the construction of an embankment in Water street, did not purport to be an exercise of the power to change the grade of the street under the charter. It does not appear that any description was made or recorded as is required when a new grade is established. It would be a strained construction to regard the action of the council as a change of grade of Water street under the charter provisions. The defendant desired to lay its tracks in Water street and the other streets mentioned in the grant, and to enable it to do this and cross Commercial slip an embankment in the street was authorized. The grade of Water street was not altered, but the defendant was permitted to build an embankment in the street for its railway. The fact that what was done did effect a change in the grade of that part of the street occupied by the embankment does not prove that what was done was in the execution of the power to alter the grade of streets conferred on the council. The primary object of this power contained in municipal charters, is to enable the municipal authorities to render a street more safe and convenient for public travel, to afford drainage, in short, to adapt it more perfectly for the purposes of a public way. It is claimed that the city under this power could lawfully authorize an embankment in part of the street, leaving the other part on a lower level. We are not called upon to say whether there is any limit to the exercise of municipal authority or that the city cannot in exercising the power to establish and alter the grade of streets, raise an embankment in a part of a street if, in its judgment, this will promote the public convenience and the purposes of the street as a highway. But we think it cannot under the guise of exercising this power, appropriate a part of a street to the exclusive, or practically to the exclusive use of a railroad company, or so as to cut off abutting owners from the use of any part of the street in the accustomed way, without making com-

pensation for the injury sustained. We have held that the authority conferred by the general railroad law upon railroad companies to cross highways in the construction of their lines, authorizes their construction on, over or below the grade of the highway crossed, and that incidental changes of the grade of the street rendered necessary to accommodate railroad crossings, gives no right of action to abutting owners who may sustain injury. (*Conkling* v. *N. Y., O. & W. R. R. Co.*, 102 N. Y. 107.) The practice of permitting railroads to cross highways is coeval with the introduction of the railroad system in the state, and the decision comports with the general understanding of the bench and the bar. In case of railroad crossings the highway is left as before. No part of it is taken or exclusively appropriated by the railroad company. In these cases there is no use of the highway for railroad purposes. Railroads of necessity intersect highways, and it is held that the state may permit them to be crossed by a railroad company and that this involves an invasion of no substantial right of the owner of the fee. We ought not to extend the doctrine of the crossing cases to unreasonable limits, and we think that it cannot be applied to justify the exercise of the public powers attempted in the present case. The *Ottenot* case (119 N. Y. 603) related to the right of an abutting owner on Commercial street to recover damages for the raising of the embankment on that street in front of his premises to meet the grade on Water street. The members of the court agreed that the judgment should be reversed under the *Uline* case (101 N. Y. 98) for error in the rule of damages. It was the opinion of the learned judge, who wrote in that case, that the plaintiff could not recover for two additional reasons, *first*, that, as the plaintiff " was not an abutting owner on Water street and had no rights therein," he had no right to complain of the construction of the railroad therein ; and, *second*, that the raising of the embankment in Commercial street was in legal effect a change of grade by the city and, therefore, there was no actionable injury. The plaintiffs here are abutting owners on Water street and their claim is not subject to the objection made to the

claim of Ottenot in the first ground mentioned. If the second ground is tenable it must rest, we think, on the point that the plaintiff Ottenot had no right to question the legality of the structure in Water street, and, therefore, that the accommodation of the grade in Commercial street to meet the grade on Water street, was in a proper sense a change of grade for street purposes. The *Ottenot* case does not, we think, control the present one, and assuming that the embankment on Commercial street could be regarded as a change of grade under charter powers, the embankment on Water street cannot be so regarded.

The point that the charter confines the plaintiffs to a remedy against the city, is based upon a provision of the charter (Tit. 9, § 17) that " when the city shall alter the recorded grade of any street or alley, the owner of any house or lot fronting thereon may within one year thereafter claim damages by reason of such alteration." The conclusion we have reached, that the action of the city in granting permission to the defendant to construct an embankment in Water street, was not a change of grade in the street within the charter provisions, disposes of this question. The charter provision was intended to afford a remedy for damages from changes of grade where none existed before, and to cases to which it applies, the remedy is necessarily exclusive. (*Heiser* v. *Mayor, etc.*, 104 N. Y. 68.) Here the plaintiff as we hold has a common-law remedy for his injury, and this is not cut off by the provision in the charter.

We think the judgment should be affirmed.

GRAY, J. I concur with Judge ANDREWS. In Judge EARL's opinion in the *Ottenot* case (119 N. Y. 603), in which I also agreed, the street, a portion only of the grade of which was changed by raising, was not subjected to or burdened by other uses. It remained as much as ever in other respects an ordinary street. The change of the grade was in the general public interests, and the moving cause for the change did not affect the complexion of the question in the case. The plaintiff's property in that case did not abut upon Water street, and he had no right to complain of the railroad structure or

embankment in question. Here the object was to subserve the railroad use, and the appropriation by the defendant of this embankment is practically exclusive. The street was subjected to a new use, with consequences as direct, in the permanent deprivation of the abutting property owners' appurtenant easement, as though the railroad was operated in front of his premises upon a structure physically incapable of other uses. I think we have, in the present case, the element of an appropriation by the defendant of the street by a permanent structure and obstruction, and, hence, it must fall within the spirit, if not the letter, of our decision in the *Story* case.

All concur, except EARL and FINCH, JJ., dissenting.

Judgment affirmed.