ALBERT T. SMITH, as Trustee, Appellant, *v.* BOSTON AND ALBANY RAILROAD COMPANY et al., Defendants, and THE TOWN OF KINDERHOOK, Respondent.

HIGHWAY — CHANGE OF GRADE THEREIN UNDER RAILROAD LAW RELATING TO GRADE CROSSINGS (L. 1890, CH. 565) — WHEN OWNER OF ABUTTING PROPERTY CANNOT RECOVER FROM TOWN FOR DAMAGES CLAIMED TO HAVE BEEN CAUSED BY CHANGE OF GRADE. The owner of property abutting upon a highway which is graded or changed by the public authorities has no right of action against the town or municipality unless such right of action is given by some express statute; and where the grade of a highway has been changed by depressing it so as to carry the highway under a railroad crossing in pursuance of an order made by the railroad commissioners of the state requiring the companies owning and operating the railroad and the town authorities to make such underground crossing for the safety of the public, under the provisions of the Railroad Law (L. 1890, ch. 565), which order was affirmed by the Court of Appeals, the abutting owner affected by such change in grade cannot maintain an action against the town for the damages claimed to have been caused thereby, under a complaint which merely alleges that such order was made by the railroad commissioners; that it was opposed by the town but affirmed by the Court of Appeals; that the order authorized the town and the railroad companies to purchase lands described therein and directed them to make such underground crossing, and that in pursuance thereof

the change in grade was made whereby the highway in front of plaintiff's premises was destroyed; and there is no allegation that the order directed the purchase of any lands of the plaintiff, or that any of his land outside of the limits of the highway was taken; the allegation that the highway was destroyed is obviously a conclusion and can only mean that in the process of changing the crossing to an underground crossing the highway in front of plaintiff's premises was depressed below the original level.

*Smith* v. *Boston & Albany R. R. Co.*, 99 App. Div. 94, affirmed.

(Argued February 22, 1905; decided March 14, 1905.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 22, 1904, which reversed an interlocutory judgment of Special Term overruling a demurrer to the complaint and sustained such demurrer.

The following question was certified : " Does the complaint of the plaintiff state a cause of action against the defendant, The Town of Kinderhook ? "

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. R. Harder* for appellant. The learned trial judge very properly overruled the demurrer interposed by the town of Kinderhook. Until the passage of sections 83 and 84 of the Highway Law providing for damages occasioned by the change of grade of a highway, the courts have very reluctantly held that no damages could be recovered therefor. Section 84 directs towns to apply for a commission to assess all damages occasioned by a highway change. (*Reining* v. *N. Y., L. E. & W. R. R. Co.*, 121 N. Y. 165; *Burr* v. *Leicester*, 121 Mass. 241; *Hartshorn* v. *Worcester Co.*, 113 Mass. 111; *Hill* v. *Mayor, etc.*, 139 N. Y. 504.) The Grade Crossing Law requires the municipalities to acquire by purchase or by condemnation all " rights and easements " of contiguous owners before removing the grade crossing. (*Comesky* v. *Village of Suffern*, 179 N. Y. 393.) This claim for damages should be held to exist independently of any statute. Municipalities have no right to destroy property as was done in this

case. (*Torge* v. *Village of Salamanca*, 176 N. Y. 324; *Sauer* v. *City of New York*, 180 N. Y. 31.)

*Frank S. Becker* for respondent. When persons are authorized by the legislature to perform acts in which the public are interested, such as grading, leveling and improving streets and highways, and they act with proper care and prudence, they are not answerable for the consequential damages which may be sustained by those who own lands bounded by the streets or highways, unless a liability therefor is created by statute. (*Sauer* v. *City of New York*, 180 N. Y. 27; *Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 270; *Conklin* v. *N. Y., O. & W. R. R. Co.*, 102 N. Y. 107; *Radcliffe* v. *Mayor, etc.*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. & H. R. R. R. Co.*, 22 N. Y. 42; *Seldon* v. *D. & H. C. Co.*, 29 N. Y. 634; *Smith* v. *Village of White Plains*, 67 Hun, 81; Dillon on Mun. Corp. §§ 689, 987–990.) Section 63 of the Railroad Law does not impose a liability upon the town of Kinderhook to pay an abutter for consequential damages from a change of grade in the highway. The act does not create any new rights of property or easements in abutting owners. It simply provides who shall acquire such property, rights or easements as exist under the statutes in force, and how it shall be done. (Sutherland on Stat. Const. § 371; *Jones* v. *City of Albany*, 151 N. Y. 223; *People* v. *Palmer*, 109 N. Y. 110; *Fitzgerald* v. *Quann*, 109 N. Y. 441; L. 1897, ch. 414, § 159; L. 1883, ch. 113; L. 1903, ch. 610.) The plaintiff cannot bring or maintain an action for the recovery of these damages against either the town of Kinderhook or the railroad companies. If the plaintiff has any rights under section 63 of the Railroad Law, they must be enforced by condemnation proceedings. (*Matter of Torge* v. *Village of Salamanca*, 176 N. Y. 330; *Dudley* v. *Mayhew*, 3 N. Y. 9; *Matter of N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 374.)

O'Brien, J. The defendants in this action severally demurred to the complaint on the ground that it did not state facts

sufficient to constitute a cause of action. The demurrers of the two railroads, defendants, were sustained at the Special Term, but the demurrer interposed by the town of Kinderhook was overruled. The plaintiff took no appeal from the decision of the Special Term sustaining the demurrers of the two railroads, and, therefore, these two defendants have, for all practical purposes, dropped out of the case. The defendant, the Town of Kinderhook, did appeal from the decision of the Special Term overruling its demurrer and on appeal the decision was reversed and the plaintiff comes here.

In this situation it is obvious that the only question presented by the appeal is, whether the complaint on its face states a good cause of action against the town of Kinderhook for the damages alleged to have been sustained by the plaintiff, resulting from the change of grade in the highway in front of his property. There is no doubt that the allegations of the plaintiff are sufficient to show that the plaintiff's property has been damaged by the changes made in the highway. The only question is whether the plaintiff states a case of liability for such damages on the part of the town. It is, therefore, important to get a clear view of the facts stated in the complaint as the ground of the liability of the town to the plaintiff for his damages. The averments of the complaint on that point are substantially as follows:

(1) That prior to the first day of January, 1903, an order was granted by the railroad commissioners of the state of New York authorizing, empowering and directing the defendants to purchase land described in such order and directing such defendants to make an underground crossing under the Boston and Albany railroad, which is leased and managed by the defendant, the New York Central and Hudson River Railroad Company, at the point where the Boston and Albany railroad crosses Chatham street, Niverville, town of Kinderhook aforesaid.

(2) That such order was affirmed by the Court of Appeals prior to January, 1903.

(3) That the proceeding taken as aforesaid was commenced

by the defendants, railroad companies, and it was defended by the defendant the Town of Kinderhook.

It is nowhere alleged that the order above described directed the defendants to purchase any lands of the plaintiff, and it is nowhere alleged that they took any such lands outside of the limits of the highway. There is a general allegation in the complaint charging the defendants with having destroyed the highway in front of the plaintiff's premises, but that is obviously not a fact, but a conclusion. All it means or can mean is that, in the process of changing the crossing to an underground crossing, the highway in front of the plaintiff's premises was depressed below the original level to the extent of ten feet. Whether a highway has been destroyed by changes in the surface, either by elevating or depressing the road as it originally existed, is, at best, only a conclusion from the actual facts. There certainly were changes made in the highway, and when such changes are stated in detail the pleader does not strengthen his cause of action by adding to the facts the conclusions of his own mind that the highway was destroyed.

It is quite obvious that there must be some flaw in the reasoning process that would make the town of Kinderhook liable to the plaintiff in damages for the changes made in the highway which the town never wanted, never asked for, and which it opposed and resisted to the end, which came when this court affirmed the order directing the overhead crossing of the railroad to be changed to an underground crossing. Before we can accept the proposition that the town is liable for damages, under such circumstances, it should be made so clear upon principles of law, or natural justice, as to be irresistible.

It is settled law in this state that the owner of property abutting upon a highway which is graded or changed by the public authorities has no right of action against the town or municipality unless such right is given by some express statute. At common law there is no such liability. It is unnecessary to cite authorities to support such a plain proposition. No one can doubt that such is the law of this state. It is

quite sufficient to refer to one case just decided by this court (*Sauer* v. *City of New York*, 180 N. Y. 27). It was held in that case that where the original street was elevated upon columns fifty feet above the original surface that it was a change in the grade of the streets within the meaning of the principle just referred to. In that case the property owners upon the line of the street, as originally laid out and used for many years, suffered damages since the highway was elevated fifty feet above the original surface, and yet in that case we held that they could not recover and that the damage concededly sustained was *damnum absque injuria*. Now, if that is so in a case where the road is elevated fifty feet, why does not the same principle apply when it is depressed ten feet? In the case just cited the law, as it exists in this state, was examined and restated, and I am utterly unable to see what distinction there can be in principle between that case and the one at bar.

The case of *Reining* v. *N. Y., L. & W. Ry. Co.* (128 N. Y. 157) is cited as an authority in favor of the plaintiff's contention that the town of Kinderhook is liable for the plaintiff's damages. That case is often cited in cases of this character, and frequently misinterpreted and misunderstood. It was also cited and relied upon in the *Sauer* case, but just how it can be held to apply in a case of this kind it is difficult to perceive. In the first place the action was not against the municipality at all but against a railroad that sought to shield itself from liability under cover of municipal action, and what was decided in the case was that a municipality had no power to change the grade of a street for the benefit of a railroad; that is to say, for the benefit of a private corporation. It had the undoubted right to make the change for the benefit of the public but not for any other purpose, and having made the change in order to accommodate a railroad the railroad was liable for damages to the abutting property owners. The language of Judge ANDREWS, in giving the opinion of the court in that case, points out very clearly the principle upon which the case was decided: "We are not called upon to say whether there is any limit to the exercise of municipal authority or that

the city cannot, in exercising the power to establish and alter the grade of streets, raise an embankment in a part of a street if, in its judgment, this will promote the public convenience and the purposes of the street as a highway. But we think it cannot, under the guise of exercising this power, appropriate a part of a street to the exclusive, or practically to the exclusive use of a railroad company, or so as to cut off abutting owners from the use of any part of the street in the accustomed way, without making compensation for the injury sustained. We have held that the authority conferred by the General Railroad Law upon railroad companies to cross highways in the construction of their lines, authorizes their construction on, over or below the grade of the highway crossed, and that incidental changes of the grade of the street rendered necessary to accommodate railroad crossings, give no right of action to abutting owners who may sustain injury. * * * The conclusion we have reached, that the action of the city in granting permission to the defendant to construct an embankment in Water street, was not a change of grade in the street within the charter provisions, disposes of this question. The charter provision was intended to afford a remedy for damages from changes of grade where none existed before, and to cases to which it applies, the remedy is necessarily exclusive."

If the town of Kinderhook had permitted the railroads to make the changes, which the plaintiff complains of, for their own benefit and accommodation and not for the benefit of the public, much reasoning could be found in the *Reining* case to sustain the plaintiff's contention ; but since the town of Kinderhook did not authorize the things to be done which the plaintiff complains of, but, on the contrary, resisted it to the end, it is difficult to see how the *Reining* case can be wrested from the true theory upon which it was decided to create a liability against the town. That all the things stated in the complaint causing the injuries to the plaintiff's property were merely acts in the process of changing the grade of the highway is beyond all question. Everything that was done

of which the plaintiff complains was either permitted or commanded by statute. The law under which the change was made is a law authorizing or requiring changes of grade, and the acts complained of are acts required or permitted by the law under which the changes were made, and to say that it is not a change of grade at all, but something else, is to assert that what was done was outside of the statute and not within its scope and purpose.

Finally, it is said that section sixty-three of the Railroad Law imposes a liability upon the town for the plaintiff's damages. The language of that statute is not very clear to me. It does permit, under certain conditions, the purchase or acquiring of lands, easements or rights necessary for the purpose prescribed in the statute, since it might happen that in order to make the change more land might be required either to widen or to straighten the street. It seems that the railroad commissioners thought that something of that kind was necessary, since the complaint states that their order directed the purchase of lands. Whatever that section means it cannot help the plaintiff to overcome the demurrer in this case. If this section of the statute does create any new rights in the plaintiff, or declare any new liability on the part of the town it is sufficient to say that the remedy of the plaintiff is not in this action against the town. Whether there is any other remedy to compel the defendants to provide, in some way, for the payment of his damages is a question not here before us, and I prefer to wait until it is. Certainly, it cannot be held in this case that the town must respond for the plaintiff's damages while the two railroads that instituted the proceedings and in whose behalf they were conducted shall go free. If there is any liability at all for the change in the grade of a street of which the plaintiff complains, it would seem to be a liability that should, at least, be shared by the railroads. But all that we now decide or can decide is that there are no facts stated in the complaint that create any liability of the town in question to the plaintiff for his damages. That is the only question now before us. It follows that the judgment appealed

from should be affirmed, with costs, and the question certified answered in the negative.

HAIGHT, J.   The question certified to this court is, " Does the complaint of the plaintiff state a cause of action against the defendant, The Town of Kinderhook?"   The plaintiff, in substance, alleges that the railroad commissioners of the state of New York had made an order " authorizing, empowering and directing the defendants to purchase land described in such order and directing such defendants to make an underground crossing under the Boston and Albany Railroad, which is leased and managed by the defendant New York Central and Hudson River Railroad Company where the Boston and Albany Railroad crosses Chatham Street, Niverville, Town of Kinderhook aforesaid, and such order required the destruction and removal of the highway in front of plaintiff's manufacturing plant at Niverville aforesaid, upon the payment by the defendants of the value therefor."   The complaint further alleges that the plaintiff is the owner, as trustee, of a tract of land upon which there is a large brick manufactory of the value of nine thousand dollars, in the town of Kinderhook, situated upon Chatham street, contiguous to the Boston and Albany railroad ; that the defendants removed and destroyed such highway in front of the plaintiff's manufactory, as aforesaid, and have dug out and removed the highway to the depth of ten feet below the plaintiff's buildings, thus destroying his means of ingress and egress to and from such street, and that he has suffered damages by reason of such acts in the sum of five thousand dollars, for which he demands judgment.

The demurrer interposed by the railroad companies was sustained by the trial court, and no appeal has been taken therefrom, so that the only question brought up for review in this court is as to whether the complaint states a cause of action against the town of Kinderhook.   It is apparent from the allegations of the complaint that the highway in front of the plaintiff's premises has been lowered a distance of about ten feet, so as to pass under the railroad crossing at that point,

and that the change made in the highway operated to deprive the plaintiff of his easement of access thereto. Assuming this to be so, the question arises as to whether he can recover damages therefor in this action. The right of an abutting owner to ingress and egress to and from his premises to the highway is a continuing easement running with the land, which may be acquired for a public use when necessary. At common law the damages to the easements of an abutting owner, made by a change of grade in a public highway for the convenience and safety of the public traveling thereon, in the absence of legislative enactment providing a remedy, are *damnum absque injuria* and no right of action exists therefor. But if such remedy is given by statute where none existed at common law, it becomes exclusive and must be followed by those seeking relief. (*Brewster* v. *Rogers Co.*, 169 N. Y. 73, 80; *Sauer* v. *City of New York*, 180 N. Y. 27, and authorities there cited.) It, therefore, becomes important to determine what, if any, remedy has been given by statute.

Under the Railroad Law, being chapter 565 of the Laws of 1890, as amended from time to time, we have an elaborate system provided for the crossing of highways by railroads. Section sixty relates to steam railroads thereafter constructed across highways. Section sixty-one provides for the laying out of new streets or highways over existing railroads, and section sixty-two provides that, upon the application of the mayor and common council of a city, the president and trustees of a village, or the town board of a town within which a highway crosses a steam railroad at grade, the board of railroad commissioners may, upon the notice prescribed by the statute to all the parties interested, including the owners of lands adjoining such crossing, change the grade, in case the public safety so requires, so as to provide an under or an over crossing, or the discontinuance of a highway and for the providing of a new highway crossing the railroad at another place and determine specifically the manner in which the same shall be made. By section sixty-five it is provided that where a crossing is made under section sixty of the act by a new

railroad it shall pay all the expenses thereof; where it is made under section sixty-one, the railroad company shall pay one-half of the expenses and the municipality the other half, and where the crossing is changed under section sixty-two, the railroad company is required to pay one-half, the municipality one-quarter and the state the other quarter of the expenses. Where the crossing is changed under section sixty-two, all of the work shall be done by the railroad corporation subject to the supervision and approval of the board of railroad commissioners, and the railroad company is required to pay the expenses of such work in the first instance and where lands, easements or rights are necessary to be acquired in carrying out such work the amount required to be paid therefor shall be primarily paid by the municipal corporation, but no claim for damages to property on account of the change or abolishment of any crossing under the provisions of the act shall be allowed unless notice of such claim is filed with the board of railroad commissioners within six months after the completion of the work necessary for such change. After the completion of the improvement and the work is approved by the railroad commissioners an accounting is required to be had as to the amount of costs incurred in the construction of the improvement and in the acquiring of the necessary lands, easements and rights therefor and the expenses divided between the railroad company, the municipality and the state in the proportions specified, the railroad commissioners drawing upon the treasurer of the state for the amount that the state is required to pay. Section sixty-six gives authority to the railroad commissioners to institute proceedings on their own motion for a change of crossing when, in their opinion, the public safety and interests so require. And section sixty-seven requires the railroad corporations and the municipality or the person or persons, to whom the decision of the railroad commissioners is directed, to comply with the decision and in case of their failure they may be compelled by the attorney-general so to do. The Supreme Court is given the power in all cases to compel compliance with the decision by mandamus.

Section sixty-three provides as follows: " The municipal corporation in which the highway crossing is located, may, with the approval of the railroad company, acquire by purchase any lands, rights or easements necessary or required for the purpose of carrying out the provisions of sections sixty, sixty-one and sixty-two of this act, but if unable to do so shall acquire such lands, rights or easements by condemnation, either under the Condemnation Law, or under the provisions of the charter of such municipal corporation. The railroad company shall have notice of any such proceedings and the right to be heard therein."

We thus have the general scheme of the statute disclosed. The railroad commissioners are given the power to do away with grade crossings when the safety of the public so requires, and to specify the manner in which the crossing shall be constructed, but in doing this the owners of lands adjoining the crossing must have notice and an opportunity to be heard and their rights considered; but in any claim that they may make for damages notice thereof must be filed with the board of railroad commissioners within the time specified, to which attention has been called. The provisions of section sixty-three, which we have quoted, provide for the acquiring by purchase of any lands, rights or easements necessary or required for the purpose of carrying out the contemplated improvement. If the improvement is of such a character as to necessitate the destruction of the easements of abutting owners of access it is apparently one of the rights contemplated by the statute, for which the abutting owners have been given a hearing. The municipal corporation can acquire these rights or easements by agreement with the parties only upon the consent of the railroad company. The railroad company, being required to pay one-half of the expenses of acquiring such rights or easements, has the right to become a party to such agreement, and if such company does not consent thereto the agreement cannot be made. But if the parties are unable to agree, then the provision of the statute is that such rights or easements *shall* be acquired by condemna-

tion, either under the Condemnation Law or under the provisions of the charter of the municipal corporation; but in that case the railroad company is required to have notice of such proceedings, to the end that the company may appear and be heard upon the question of damages. We, therefore, conclude that under a fair and reasonable construction of the statute the legislature contemplated the acquiring of easements which would necessarily be destroyed by the construction of the improvement; but, as will be seen, they must be acquired in the manner pointed out by the statute, and that is by the agreement of the parties, or, in case they are unable to agree, by proceedings to condemn either under the Condemnation Law or under the provisions of the charter of the municipality. In that way the rights of the railroad company, of the town and the state can be protected, as well as that of abutting owners who have their easements impaired. (*Matter of Torge* v. *Vil. of Salamanca*, 176 N. Y. 324.) When the easement is acquired by agreement or by condemnation it is acquired for all time, or so long as the improvement in the highway remains unchanged. This cannot be accomplished under the complaint in this action. The remedy is one provided by statute, which did not exist at common law, and, therefore, under the authorities becomes exclusive. It may be claimed that the right of instituting the condemnation proceedings rests in the town, and that the town in this case refuses to institute such proceedings; if so, the plaintiff has his remedy through the writ of mandamus to compel the town board to take the necessary steps to acquire any easements that have been taken from him. Our conclusion, therefore, is that the complaint does not state facts constituting a cause of action, and that the judgment of the Appellate Division should be affirmed, with costs, and the question certified answered in the negative.

Cullen, Ch. J. I concur in the views of Judges O'Brien and Haight, that the act of the defendant, the Town of Kinderhook, of which the plaintiff complains, was a change of the

grade of the highway, and, therefore, under the settled law of this state gave the plaintiff no cause of action. I do not think that the question of the defendant's liability is in any way affected by the fact that the change of grade was the result of proceedings instituted by the railroad company before the railroad commissioners, an application which the town resisted. The legislature could direct the town, even against its will, to change the crossing of the railroad over the highway, and if in effecting such change any property rights were invaded or injured the legislature could require the town to make compensation. Whether, under section 63 of the Railroad Law, an abutter is entitled to compensation for the injuries sustained by a change of grade, as held by Judge HAIGHT, I think it unnecessary to now determine, though it must be conceded that such a construction of the section is in harmony with the present policy of the state, which, through legislation, has provided for indemnity to an abutter for the change made by the voluntary act of municipal authorities.

CULLEN, Ch. J., and WERNER, J., concur in result, in memorandum, with O'BRIEN and HAIGHT, JJ.; GRAY, J., concurs with O'BRIEN, J.; BARTLETT and VANN, JJ., concur with HAIGHT, J.

Judgment affirmed, with costs, and question certified answered in the negative.