(127 App. Div. 875.)

### BERNHARD v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department.    July 24, 1908.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ACTIONS FOR DAMAGES—EVIDENCE.

Where a city passed an ordinance permitting a railroad to erect a new bridge across a street and prescribing the mode of construction, but the excavation and change of grade of a street required by the erection of such bridge was done under the supervision and direction of the city officers, the railroad having nothing to do with it, a finding in an action by an abutting owner for damages, that the work was done by the city, was justified.

2. SAME—PRELIMINARY PROCEEDINGS—ORDINANCE AUTHORIZING IMPROVEMENT.

White Charter, § 30 (Laws 1898, p. 377, c. 182, as amended by Laws 1901, p. 1355, c. 552), provides that the common council shall not change the grade of any street which has been legally established, except upon a two-thirds vote of all members of council. Section 11 of the Railroad Law (Laws 1890, p. 1087, c. 565) provides that no railroad shall erect a bridge upon a street without the city's consent. A railroad notified defendant city that it proposed to erect a bridge, and the city council passed an ordinance permitting its erection and directing the grade to be adopted, etc. *Held*, that the direction of the grade to be adopted was not an attempted compliance with section 30 of the charter, requiring a vote of two-thirds of the council for changing a grade, but was only an enlargement of the terms of the consent given under the railroad law; the two statutes being entirely distinct.

3. SAME—CHANGE OF GRADE—FAILURE TO MAKE COMPENSATION—LIABILITY OF CITY.

Under White Charter, § 30 (Laws 1898, p. 377, c. 182, as amended by Laws 1901, p. 1355, c. 552), providing that the common council shall not change the grade of any street legally established, except upon compensation for damages, and section 11 of the Railroad Law (Laws 1890, p. 1087, c. 565), prohibiting any railroad from erecting a bridge, etc., without the city's consent, even if the common council merely permitted a railroad to change the grade of a street without making compensation to abutting property owners, and did not supervise the change, if the change was permitted for the convenience of the railroad, the city would still be liable for any damage suffered by the abutting property owner.

4. SAME—LEGISLATIVE AUTHORITY TO REQUIRE COMPENSATION.

The Legislature has power to compel compensation for damages resulting to abutting property owners from changing the grade of a city street.

McLennan, P. J., and Kruse, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Adam Bernhard against the city of Rochester to re-

cover damages for changing the grade of a street. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Judgment and order affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward Harris, Jr., for appellant.
George D. Forsyth, for respondent.

SPRING, J. For 35 years or more Orchard street has been one of the public streets of the city of Rochester, extending in a northerly and southerly direction. It is a residence street, quite thickly settled, until recently with a dirt road and with sidewalks all at a grade fixed and recognized by user for a long period of time. The plaintiff owns a lot with 159 feet frontage on the westerly side and another of 72 feet wide on the easterly side of the street, and each lot abuts on the north on the premises of the New York Central Railroad Company, whose tracks for many years crossed the street by an overhead wooden bridge. In March, 1904, the said railroad company notified the common council of the defendant that it proposed to erect a new bridge across said Orchard street in place of said wooden bridge, and requested said body "to take suitable action in relation thereto." In response to such communication, the common council on the 12th of April, 1904, duly passed an ordinance permitting said company to erect a steel girder bridge in place of said wooden bridge, prescribing the mode of construction and the elevation of said new bridge and the grade of the street on either side thereof, and the consent was further granted upon the condition that the company "indemnify and save harmless said city from any legal liability incurred by reason of the granting of such permission." In making the change of grade to meet the new conditions, the street in front of the plaintiff's premises was excavated and depressed from one to four feet, seriously impairing the value and use of each of his lots. This work was supervised and carried on under the direction of the assistant engineer and other officers of the city, and the railroad company apparently had no supervision over the work of excavating and changing the grade. The jury were permitted to pass upon the proposition whether the work was performed by the city, and their verdict is conclusive, for it is sustained by abundant evidence.

Section 30 of the White Charter (chapter 182, p. 377, Laws 1898, as amended by chapter 552, p. 1355, Laws 1901), which is the charter of the city of Rochester, provides that the common council shall not "change the grade of any street which has been legally established, except upon a vote of two thirds of all the members of the common council, and except also upon compensation for damages done, to be ascertained as damages are ascertained under the condemnation law for lands taken." This statute was not complied with. There was no vote at all by the common council distinctly authorizing the change of grade, and no compensation for damages was ever ascertained or paid. The common council granted the consent to the substitution of the steel girder bridge for the existing wooden bridge in

pursuance of section 11 of the Railroad Law (Laws 1890, p. 1087, c. 565). This assent was given upon the application of the railroad company, and the ordinance recited the desire of the company and granted the permission sought, and that was its only purpose. The direction of the grade to be adopted was not an attempted compliance with section 30 of the city charter, but was an enlargement of the terms of the consent, indicating, it may be, that the city intended to maintain control and supervision of the change of grade in the street. The relief granted in accordance with section 11 referred to was for the benefit of the railroad company. Section 30, however, is the only provision in the city charter investing the common council with authority to change the established grade of a street. Two requirements are essential before the change of grade may be authorized: One, the vote of two-thirds of all the members of the common council; and, the other, "upon compensation for damages done." These provisions are chiefly for the benefit of the abutting owner to assure him compensation for the injuries to his property by reason of changing the established grade. The common council are to take the initiative in changing the grade of a street in the city, and this authority is entirely distinct from the consent given to the railroad company. If, however, we hold that the direction in the consent designating the grade was a compliance with section 30, the city has failed in the other essential preliminary, in not compensating the plaintiff. The city therefore made this change illegally for the convenience of the railroad company.

The counsel for the appellant contends that the charter provision which authorized the ascertainment of damages under the condemnation law affords an adequate and exclusive remedy to the plaintiff. This proposition would probably be correct if the city had proceeded to change the grade in pursuance of section 30, which constitutes its authority for so doing. Smith v. B. & A. R. R. Co., 181 N. Y. 132, 143, et seq., 73 N. E. 679; Matter of Melenbacker v. Village of Salamanca, 188 N. Y. 370, 377, 80 N. E. 1090. The difficulty with the contention, however, is that the city did not conform to the statute which defines the method of changing grade, and consequently the plaintiff is not required to adopt the remedy provided in that statute. The distinction is well recognized by authority. Fuller v. City of Mount Vernon, 171 N. Y. 247, 252, et seq., 63 N. E. 964; Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821.

If the plaintiff had resorted to mandamus to compel the city to ascertain the damages to his property, he might have been confronted with the allegation that the common council had not authorized the street to be lowered—that it had only assented to the application of the railroad company. In any event, the city, when invading the property rights of a street abutter who by statute is entitled to damages where his premises are injured by a change of grade of the street, cannot successfully justify its wrongful acts by invoking the statute which is the only warrant for changing the grade and which it has ignored. If the common council permitted the railroad company to change the grade for its benefit, the city would, in my judgment, still be liable to the plaintiff for any damages he might have suffered from

the change. Reining v. N. Y., L. E. & W. R. R. Co., 128 N. Y. 157, 28 N. E. 640, 14 L. R. A. 133; Smith v. B. & A. R. R. Co., 181 N. Y. 132, 138, 73 N. E. 679. The reason why an abutting owner cannot recover damages caused to his property by change in the grade of the street, except a statute directs compensation therefor, is because of the public use of the street. His personal damages must yield to any. change required for the benefit of the public. If, however, the alteration is made for the convenience of a railroad company, the reason for the rule does not exist.

It is also urged that the depression of the street was merely an incident to the construction of the bridge for which no damages will lie; in other words, that the grade was changed to conform to the new situation caused by the erection of the steel bridge and in order that the street might be restored to its former condition so far as practicable, and Conklin v. O. & W. R. R. Co., 102 N. Y. 117, 6 N. E. 663, Fries v. N. Y. & H. R. R. R. Co., 169 N. Y. 270, 62 N. E. 358, and kindred cases, are cited in support of this proposition. Assuming the correctness of the legal proposition stated, the verdict of the jury upon the facts in the record renders it inapplicable. The railroad company was not in command in changing the grade, as already suggested. The common council in its consent directed the manner of performing the work, and the engineering department of the city undertook the project. It may have done this by virtue of the indemnity afforded the city by the railroad company. No matter what the reason, the city officials were the responsible actors in lowering the street, and for a change of grade in the street of a city the Legislature, as it was competent to do (Matter of Borup, 182 N. Y. 222, 74 N. E. 838, 108 Am. St. Rep. 796, and cases cited supra), has directed damages to be paid. Payment of damages was imposed by statute, the city made the change, although not in accordance with the statute, injury to the plaintiff's property resulted by reason of such change, and the liability of the city follows.

The previous grade of the street had been fully established by user. Folmsbee v. City of Amsterdam, 142 N. Y. 118, 124, 36 N. E. 821. Sidewalks had been laid, and the street had been maintained at a grade, and residences had been erected with reference to the same, and the defendant had long acquiesced in recognizing the existing grade, and an ordinance fixing it was unnecessary.

The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs.

ROBSON, J., concurs. WILLIAMS, J., concurs in result. Mc-LENNAN, P. J., and KRUSE, J., dissent.