(162 App. Div. 731)

### BRUSH v. NEW YORK, N. H. & H. R. CO. et al.  (No. 5880.)

(Supreme Court, Appellate Division, First Department. May 29, 1914.)

1. RAILROADS (§ 96*)—CROSSING HIGHWAYS—CHANGING GRADE—PROCEEDINGS —LIABILITY.

Compliance with Railroad Law (Laws 1890, c. 565) § 61, as added by Laws 1897, c. 754, now Consol. Laws, c. 49, § 90, providing for new streets across railroads, and for a hearing before the Public Service Commission on notice, is a prerequisite to the initiation of a proceeding to open a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

street across a railroad; and, where there is no compliance, an owner sustaining damages caused by a change in grade of the street which had not previously been opened across the tracks, by the construction of bridges and abutments to carry the street over the tracks, may sue for the removal of the bridges and approaches, or for damages caused thereby.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 284–290; Dec. Dig. § 96.*]

2. RAILROADS (§ 99*)—HIGHWAY CROSSINGS—CHANGE OF GRADE—DAMAGES—LIABILITY.

Where a grade of a street is changed on the petition of a railroad company and for its convenience, an abutting property owner may recover the damages caused by the change.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

3. RAILROADS (§ 99*)—HIGHWAY CROSSINGS—CHANGE OF GRADE—DAMAGES TO ABUTTING OWNER.

A street, which has been maintained for 40 years without having the grade thereof established by law, has, under Greater New York Charter (Laws 1901, c. 466) § 441, an established grade; and a change of grade on petition of a railroad company, for its convenience, renders the company liable for the damages sustained by an abutting property owner.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

Appeal from Special Term, New York County.

Action by Abbott P. Brush against the New York, New Haven & Hartford Railroad Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert L. Luce, of New York City, for appellant New York, N. H. & H. R. Co.

Charles J. Nehrbas, of New York City, for appellant City of New York.

Ralph E. Brush, of New York City, for respondent.

SCOTT, J. The object of attack in this action is a bridge and its approaches, erected by the defendant railroad company for the purpose of carrying Baychester avenue over the tracks of said company. Plaintiff is the owner of lots on Baychester avenue in front of the approach to the bridge. It has been found that the erection and maintenance of said approach has injured the value of plaintiff's said property to the extent of $700, and the judgment appealed from requires the abatement of the alleged nuisance, or, in the alternative, the payment of the ascertained damages.

The Harlem River & Portchester Railroad Company, now leased to and operated by the defendant railroad company, is a steam surface railroad company whose line extends from the city of New Rochelle to the Harlem River. Its original right of way, where it crosses Baychester avenue, was acquired by condemnation in 1871. In 1873 it acquired an additional width of land by deed. Baychester avenue, under the name of Main avenue, first appears, as it is said, on a map filed on September 20, 1873, by one Thomas Tone, who then owned a tract

of land lying adjacent to the railroad's right of way. On this map Main avenue is not shown as crossing the railroad's property, but extends north and south from the exterior lines of the railroad's right of way. Although not formally laid out as a street by the city authorities until 1898, Main (now Baychester) avenue seems to have been used for some 40 years as a right of way across the railway tracks at grade; the company, however, maintaining gates at the northerly side of its property at Baychester avenue, said gates having locks upon them. In 1874 the Portchester road was leased for 99 years to defendant railroad company, which now operates it.

On August 3, 1898, the board of public improvements of the city of New York adopted a general plan of the streets in the vicinity, which coincided with the Tone map filed in 1873. On December 18, 1899, the said board adopted another map, which was filed on February 16, 1900. This map showed Baychester avenue widened to 100 feet and carried across the railroad tracks at an elevation of 24.5 feet above datum. This was the first plan upon which the grade of Baychester avenue was officially fixed. On April 25, 1900, the board of public improvements instituted condemnation proceedings to acquire title to Baychester avenue, from Pelham Bay Park to Fourth street, thus crossing the railroad tracks, and commissioners were appointed on October 21, 1901. Meanwhile, and on September 18, 1901, the board of public improvements filed an additional map, changing the width and grade of Baychester avenue, so that in front of plaintiff's premises there were established two grades; the middle 60 feet of the avenue being elevated, so as to permit of the building of an approach to the bridge over the railway, and the avenue on either side of the approach being left at or near the natural grade.

The defendant railroad company interposed objections to the condemnation of the avenue and to the appointment of commissioners of estimate, on the ground that the city had failed to comply with the provisions of what was then known as section 61 of the Railroad Law. This objection apparently led to negotiations between the city and the defendant railroad company, and under date of September 20, 1904, the defendant railroad company and the Portchester Company presented a petition to the board of estimate and apportionment, wherein it was recited that:

"For the corporate purpose of these petitioners, and pursuant to the powers conferred by their respective acts of incorporation, and by the laws of the state of New York, and in order to avoid accidents *and to facilitate the use of the road*, it is necessary to improve the entire line of the said the Harlem River & Portchester Railroad by laying four additional tracks, making six in all, *and by eliminating all grade crossings* between the Harlem River and the junction with the New York, New Haven & Hartford Railroad at New Rochelle."

It was then set forth that for the purpose aforesaid it was necessary and for the public interest that the grades of certain existing streets shown on the map or plan of the city of New York be changed. Then followed a list of the proposed changes, including a change in the grade of Main (Baychester) avenue by raising the same from 24.5 feet to 30 feet where and as far as said street crosses the right of way

of the railroad company. And the defendant railroad company offered at its own expense to construct and maintain the necessary bridges and abutments to carry its proposal into effect. In response to the petition an agreement was entered into between the city of New York and the defendant railroad company whereby, in consideration of. certain acts to be performed by the city, the said railroad company agreed to construct and maintain bridges and abutments over certain streets, and also bridges and abutments, except the pavement, over its tracks to carry certain other streets, agreeing to—

"indemnify the city against any legal liability for damages, if any shall accrue, to lands, tenements, and hereditaments abutting upon any of the streets the grade of which shall have been raised at the request of the New Haven Company and as a consequence of such change of grade."

To accomplish all that the New Haven Company desired, it was necessary to procure an enabling act to be passed by the Legislature, which having been done (Laws 1905, c. 670), a further agreement was entered into between the city and the New Haven Company, resulting in the raising of the grade of Main or Baychester avenue to the desired height and the construction by the defendant railroad company of the bridge over its tracks and the approach thereto, in consequence of which the plaintiff has suffered damage. Having thus arrived at a satisfactory settlement of its difference with the city, the defendant railroad company withdrew its opposition to the condemnation proceedings, and granted to the city a perpetual easement to carry Baychester avenue over its right of way. No application to the Railroad Commission under section 61 of the Railroad Law was ever made, although it is conceded that all the provisions of the New York City Charter relative to the acquisition and opening of streets were fully complied with.

[1] The plaintiff contends that the proceedings for opening Baychester avenue, so far as this included the change or establishment of the grade thereof, were illegal, because no application was made by the city of New York or the railroad company to the Board of Railroad Commissioners, or its successors, the Public Service Commission, to determine how Baychester avenue should be carried over the railroad company's tracks, and hence that the approach constructed in front of his premises is an unlawful structure. The defendants contend, on the other hand, that section 61 of the Railroad Law (now section 90) was intended only for the benefit of the city and the railroad company, and that if they are agreed, as they were in the present case, there is no necessity for an application to the Commission. The section referred to read as follows:

"Sec. 61. When a new street, avenue or highway, or new portion of a street, avenue or highway shall hereafter be constructed across a steam surface railroad, such street, avenue or highway, or portion of such street, avenue or highway, shall pass over or under such railroad or at grade as the Board of Railroad Commissioners shall direct. Notice of intention to lay out such street, avenue or highway, or new portion of a street, avenue or highway, across a steam surface railroad, shall be given to such railroad company by the municipal corporation at least fifteen days prior to the making of the order laying out such street, avenue or highway by service personally on,

the president or vice president of the railroad corporation, or any general officer thereof. Such notice shall designate the time and place and when and where a hearing will be given to such railroad company, and such railroad company shall have the right to be heard before the authorities of such municipal corporation upon the question of the necessity of such street, avenue or highway. If the municipal corporation determines such street, avenue or highway to be necessary, it shall then apply to the Board of Railroad Commissioners before any further proceedings are taken, to determine whether such street, avenue or highway shall pass over or under such railroad, or at grade, whereupon the said Board of Railroad Commissioners shall appoint a time and place for hearing such application, and shall give such notice thereof, as they judge reasonable, not, however, less than ten days, to the railroad company whose railroad is to be crossed by such new street, avenue or highway, * * * to the municipal corporation and *to the owners of land adjoining the railroad and that part of the street, avenue or highway to be opened or extended.* The said Board of Railroad Commissioners shall determine whether such street, avenue or highway, * * * shall be constructed over or under such railroad or at grade; and if said board determine that such street, avenue or highway shall be carried across such railroad above grade, then said board shall determine the height, the length and the material of the bridge or structure by means of which such street, avenue or highway shall be carried across such railroad, and the length, character and grades of the approaches thereto; and if said board shall determine that such street, avenue or highway shall be constructed or extended below the grade, said board shall determine the manner and method in which the same shall be so carried under, and the grade or grades thereof, and if said board shall determine that said street, avenue or highway shall be constructed or extended at grade, said board shall determine the manner and method in which the same shall be carried over said railroad at grade and what safeguards shall be maintained. The decision of the said board as to the manner and method of carrying such new street, avenue or highway, or new portion of a street, avenue or highway, across such railroad, shall be final, subject, however, to the right of appeal hereinafter given. The decision of said board rendered in any proceeding under this section shall be communicated within twenty days after final hearing to all parties to whom notice of the hearing in such proceeding was given, or who appeared at such hearing by counsel or in person." As added by Laws 1897, c. 754, § 1.

The Court of Appeals has recently held that compliance with this provision of law was a necessary prerequisite to the legal initiation of proceedings to open a street across a railway. Matter of Ludlow Street, 172 N. Y. 542, 65 N. E. 494; N. Y. Central & Hudson R. R. Co. v. City of Buffalo, 200 N. Y. 113, 93 N. E. 520; Matter of the City of New York (West 134th Street), 204 N. Y. 465, 97 N. E. 862. In view of these expressions of opinion by the Court of Appeals, we should not feel justified in holding that the statute might safely be ignored in any such proceeding, and indeed the statute itself contains internal evidence that it was intended that property owners likely to be affected by the mode of crossing to be adopted are entitled to notice and a hearing before the commissioners. It is provided (in section 61) that when an application is made to the commissioners they shall give notice "to the owners of land adjoining the railroad, and that part of the street, avenue or highway to be opened or extended." By succeeding sections property owners are given the right to appeal from the determination of the commissioners, and by section 65 provision is made for filing with the commissioners claims for damages to property on account of the change or abolishment of any crossing. In the absence of such an application and the proceedings incident thereto, it is not

apparent that the plaintiff could maintain an action at law for his damages. Smith v. Boston & Albany Railroad Co., 181 N. Y. 132, 73 N. E. 679. I am therefore of the opinion that the structure in front of plaintiff's premises is an illegal obstruction, because the consent of the Railroad Commission to its erection was neither obtained nor asked for.

[2] The other objections to the judgment appealed from need little consideration. It is said that no damages may be recovered for the change of grade of a public highway, unless specifically given by some statute. Sauer v. City of New York, 180 N. Y. 27, 31, 72 N. E. 579, 70 L. R. A. 717. That is true where the change is made solely for the public convenience; but where it is made, as in the present case, upon the petition of a railroad company, and in the main, at least, for its convenience, a different rule obtains. This distinction was pointed out by Judge Haight in the Sauer Case, and has been made in a number of other cases. Bernhard v. City of Rochester, 127 App. Div. 875, 112 N. Y. Supp. 229, affirmed 194 N. Y. 566, 88 N. E. 1114; McCabe v. City of New York, 155 App. Div. 262, 140 N. Y. Supp. 127.

[3] It is also said that the establishment of the grade of Baychester avenue was not a change of grade, but the fixation of an original grade, for which no damages can be recovered. It is found, however, as a matter of fact, that for 40 years the physical grade of Baychester avenue was practically level therewith, and section 441 of the Greater New York Charter (Laws 1901, c. 466) provides that:

"Whenever any street in the city of New York shall have been used as such for upwards of twenty years without having the grade thereof established by law, the level or surface of such street * * * shall be deemed to be and to have been the grade thereof."

The judgment appealed from must be affirmed, with costs. All concur.