GEORGE W. SAUER, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

NEW YORK (CITY OF) — DAMAGES ARISING FROM CONSTRUCTION AND MAINTENANCE OF VIADUCT IN ONE HUNDRED AND FIFTY-FIFTH STREET, ARE DAMNUM ABSQUE INJURIA. The construction of the elevated viaduct along One Hundred and Fifty-fifth street, in the city of New York, under chapter 576 of the Laws of 1887, the fee of which street is in the city, constituted a devotion of the street to a proper street use; the structure is not, therefore, a nuisance, and the damages caused to an owner of property abutting thereon by its construction and maintenance are *damnum absque injuria*; and, in the absence of legislation authorizing it, he is entitled to no relief, either legal or equitable.

*Sauer* v. *City of New York*, 90 App. Div. 36, affirmed.

(Argued November 21, 1904; decided December 6, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Abram I. Elkus* and *Carlisle J. Gleason* for appellant. Plaintiff's easements of light, air and access in and over One

Hundred and Fifty-fifth street and Eighth avenue are property of which, under the Constitution, he cannot be deprived without compensation. (*Story* v. *El. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *El. R. R. Co.*, 104 N. Y. 268; *Kane* v. *El. R. R. Co.*, 125 N. Y. 164; *Reining* v. *Ry. Co.*, 128 N. Y. 157.) Plaintiff has been deprived of these easements by the structure in question. (*Story* v. *R. R. Co.*, 90 N. Y. 122; *Reining* v. *R. R. Co.*, 128 N. Y. 157; *Kellinger* v. *F. S. S. R. R. Co.*, 50 N. Y. 206; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505.) The city cannot avoid the obligation to compensate plaintiff for the destruction of his easements upon the ground that the viaduct is a proper street use. (*Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 291; *Reining* v. *N. Y. El. R. R. Co.*, 128 N. Y. 157; *Knox* v. *Mayor, etc.*, 55 Barb. 404; *Williamette* v. *O. R. & N. Co.*, 26 Oreg. 24; Dillon on Mun. Corp. § 722; *B. & P. R. R. Co.* v. *Church*, 108 U. S. 317; *State* v. *Burdetta*, 73 Md. 185; *R. R. Co.* v. *Angel*, 41 N. J. Eq. 316; *Sullivan* v. *Ware*, 72 Cal. 248; *Kane* v. *El. R. R. Co.*, 125 N. Y. 164.) The city cannot avoid liability to this plaintiff upon the claim that this viaduct was erected in the exercise of a governmental function. (*Sammons* v. *City of Gloversville*, 175 N. Y. 346.)

*John J. Delany, Corporation Counsel* (*Theodore Connoly* of counsel), for respondent. A property owner who suffers consequential damage through the work of improvement in a public street conducted under lawful authority, must bear his loss as an incident to the use of the street by the community. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 270; *Matter of Andersen*, 178 N. Y. 416; *Muhlker* v. *N. Y. & H. R. R. Co.*, 173 N. Y. 549; *Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 18; *Benner* v. *A. D. Co.*, 134 N. Y. 156; *Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118; *Hill* v. *Mayor*, 139 N. Y. 495; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584; *Uppington* v. *City of New York*, 165 N. Y. 222; *Bates* v. *Holbrook*, 171 N. Y. 460.) The viaduct is a public street. (*Matter of N. Y. D. Ry.*

*Co.*, 107 N. Y. 42; *Matter of P. R. T. Co.* v. *Dash*, 125 N. Y. 93; *S. P. Assn.* v. *Mayor, etc.*, 152 N. Y. 257; *Tal-bot* v. *N. Y. & H. R. R. Co.*, 151 N. Y. 155; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 108; *A. B. N. Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 252; *Bischoff* v. *N. Y. El. R. R. Co.*, 138 N. Y. 257; *Flynn* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 11; *Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 270; *Muhlker* v. *N. Y. & H. R. R. Co.*, 173 N. Y. 549; *Chicago* v. *Taylor*, 125 U. S. 261.)  A street may be devoted to any new use so long as that use is a street use. (Cooley on Const. Lim. [7th ed.] 800; *People* v. *Kerr*, 27 N. Y. 192.)

HAIGHT, J.  This action was brought to enjoin the defendant from using a viaduct constructed, in 1893, along 155th street, with approaches from Eighth avenue, in the city of New York, to compel the removal of the same and to recover damages.  The plaintiff is the owner of premises situated on the southwesterly corner of Eighth avenue and One Hundred and Fifty-fifth street, on which he maintained a frame building known as the "Atlantic Casino," as a public resort for recreation and amusement, until the same was destroyed by fire in 1897.  The city of New York is the owner in fee of 155th street and 8th avenue, and holds the same in trust for the public as highways.  155th street had been regulated and graded from 8th avenue westerly to Bradhurst avenue, which runs along the foot of a bluff about 70 feet high.  The street, as laid out on the records, ascends the bluff and continues on westerly to the North river, but it had never been opened and graded from Bradhurst avenue up the bluff to St. Nicholas place.  A bridge known as McComb's Dam bridge had been constructed over the Harlem river, at the easterly end of 155th street, and from that bridge to Bradhurst avenue was substantially a level plain.

The legislature, by ch. 576 of the Laws of 1887, authorized the commissioner of public works of the city of New York, with the approval of the board of estimate and apportion-

ment, to improve 155th street by erecting an elevated iron roadway, viaduct or bridge from the top of the bluff at St. Nicholas place over 155th street to McComb's Dam bridge, with the necessary abutments and arches over intersecting avenues, and approaches thereto for the passage of animals, persons, vehicles and traffic. Subsequently the viaduct or bridge complained of was constructed according to the provisions of this act. In front of the plaintiff's premises it is 50 feet above the surface of 155th street as originally graded. The surface of the street as it existed prior to the construction of the viaduct has not been changed, but remains unobstructed for public travel, except as interfered with by the necessary abutments upon which the viaduct rests and the stairway leading thereto.

The plaintiff has undoubtedly suffered consequential damages by reason of the construction and maintenance of the viaduct for which the legislature might properly provide. His ingress and egress, together with the free and uninterrupted circulation of air and light, have been impaired, and the value of his property has been decreased by reason of dust, dirt and noise occasioned by the structure. It may be that he has a remedy under existing statutes, but that question we are not now called upon to determine. The question now before us is whether, he is entitled, as a matter of right, to the injunction prayed for and for the damages suffered. It has been found as a fact upon the stipulation of the parties that long "prior to the year 1886 (the time when the plaintiff became the owner of the lands in question), the title in fee simple to the lands included within the lines of Eighth avenue and One Hundred and Fifty-fifth street had been duly acquired according to the statutes in such case made and provided, and its ancient grants and charters, by the Mayor, Aldermen and Commonalty of the City of New York, and these streets were duly designated as public streets and highways according to law and were used and maintained as such streets and highways in the City and County of New York." The fee of the street having been acquired according to the

provisions of the statute, we must assume that full compensation was made to the owners of the lands through which the streets and avenues were laid out, and that thereafter the owners of lands abutting thereon hold their titles subject to all of the legitimate and proper uses to which the streets and public highways may be devoted. As such owners they are subject to the right of the public to grade and improve the streets, and they are presumed to have been compensated for any future improvement or change in the surface or grade rendered necessary for the convenience of public travel, especially in cities where the growth of population increases the use of the highways. The rule may be different as to peculiar and extraordinary changes made for some ulterior purposes other than the improvement of the street, as for instance, where the natural surface has been changed by artificial means, such as the construction of a railroad embankment or a bridge over a railroad making elevated approaches necessary. But as to changes from the natural contour of the surface rendered necessary in order to adapt the street to the free and easy passage of the public they may be lawfully made without additional compensation to abutting owners, and for that purpose bridges may be constructed over streams and viaducts over ravines, with approaches thereto from intersecting streets.

The leading case upon this question is that of *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (4 N. Y. 195). In that case the city of Brooklyn, in grading a street, caused an embankment to be dug away, whereby the premises of the plaintiffs were undermined and caved in, causing them heavy damage. It was held that in the absence of proof showing a failure to exercise proper care and skill in the execution of the work, no action for damages could be maintained by the adjacent owner. BRONSON, Ch. J., in delivering the opinion of the court, said : "In some instances the landowner will suffer a heavy loss, and this case may perhaps be one of the number, but it is *damnum absque injuria* and the owner must bear it. He often gets the benefit for nothing, when the value of his

land is increased by opening or improving a street or high-
way; and he must bear the burden in the less common case
of a depreciation in value in consequence of the work."
This case has been repeatedly followed in this state in numer-
ous cases which have been collated and cited by Martin, J.,
in the case of *Fries* v. *N. Y. & H. R. R. Co.* (169 N. Y. 270,
283). In the case of *Transportation Co.* v. *Chicago* (99 U. S.
635) the city was engaged in constructing a tunnel under the
Chicago river for street purposes. In doing the work the
plaintiff's access to its wharf, in the navigation of the river, as
well as its access to its warehouse from the street, was tem-
porarily impeded, and the plaintiff suffered damages thereby.
The improvement was made under the authority conferred by
the legislature. It was held that the municipality was not
liable. Mr. Justice Strong, in delivering the opinion of the
court, said: "It is undeniable that in making the improve-
ment of which the plaintiffs complain the city was the agent
of the state, and performing a public duty imposed upon it
by the legislature; and that persons appointed or authorized
by law to make or improve a highway are not answerable for
consequential damages, if they act within their jurisdiction
and with care and skill, is a doctrine almost universally
accepted alike in England and in this country. * * *
The state holds its highways in trust for the public. Improve-
ments made by its direction or by its authority are its acts,
and the ultimate responsibility, of course, should rest upon
it. But it is the prerogative of the state to be exempt from
coercion by suit, except by its own consent. This preroga-
tive would amount to nothing if it does not protect the agents
for improving highways which the state is compelled to
employ. The remedy, therefore, for a consequential injury
resulting from the state's action through its agents, if there be
any, must be that, and that only, which the legislature shall give.
It does not exist at common law. The decisions to which we have
referred were made in view of Magna Charta, and the restric-
tion to be found in the constitution of every state, that private
property shall not be taken for public use without just com-

pensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action. This is supported by an immense weight of authority." (See *Smith* v. *Corporation of Washington*, 20 How. [U. S.] 135 ; *Chicago* v. *Taylor*, 125 U. S. 161 ; *Governor & Co. of The Cast Plate Mfgrs.* v. *Meredith*, 4 Durnf. & East, 794 ; *Sutton* v. *Clarke*, 6 Taunt. 28 ; *Boulton* v. *Crowther*, 2 Barn. & Cres. 703 ; *Green* v. *Borough of Reading*, 9 Watts [Pa.], 382 ; *O'Connor* v. *Pittsburgh*, 18 Pa. St. 187 ; *Callender* v. *Marsh*, 1 Pick. 418 ; *City of Chicago* v. *Rumsey*, 87 Ill. 348, 363, and authorities there cited ; see, also, Cooley on Const. Lim., page 542 and notes.)

In the case under consideration, as we have seen, One Hundred and Fifty-fifth street continued west to Bradhurst avenue. There it met a steep bluff seventy feet high, on the top of which was St. Nicholas place. The title of the street up the bluff had been acquired and recorded, but it had never been opened and worked as a street. The bluff was the natural contour of the surface, and for the purpose of facilitating the easy and safe travel of the public from St. Nicholas place to other portions of the city the legislature authorized the construction of the viaduct in question. It is devoted to ordinary traffic by teams, vehicles and pedestrians. It is prohibited for railroad purposes. It is one of the uses to which public highways were primarily opened and devoted. It was constructed under legislative authority in the exercise of governmental powers for a public purpose. It is not, therefore, a nuisance and the plaintiff is not entitled to have its maintenance enjoined or to recover in this action the consequential damages sustained.

The judgment should be affirmed, with costs.

3

Vann, J. (dissenting). I dissent upon the ground that the construction by a municipal corporation of a new and independent street in the form of a bridge, fifty feet high and sixty-three feet wide, extending lengthwise through block after block over an existing street, which, graded and paved for years, is left undisturbed except by the huge columns supporting the elevated structure, is neither the improvement of the street as a street, nor a proper street use sanctioned by precedent, or coming within the reasonable contemplation of the parties when the fee of the surface street was acquired from the abutting owner, who has no access to the aerial street from his own premises, and when this is done without compensation, it is a taking of private property for public use in direct violation of the Constitution.

Bartlett, J. (dissenting). I agree with Judge Vann's memorandum of dissent.

Under the judgment about to be made the city could bridge Fifth avenue, from 110th street to Washington Square, at a level above the heights of the adjoining structures, thereby impairing the light, air and access of every residence and ousiness building, and under the plea of a street use escape all liability for damages. If this can be done it simply amounts to confiscation.

The prevailing opinion cites *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (4 N. Y. 195), and the line of cases following it, which hold that the legitimate change of the grade of a street to the damage of abutting lot owners is *damnum absque injuria*.

In the case at bar there is no change of grade; it is stipulated in the case as follows: "The grade and surfaces of 155th Street and 8th Avenue, in front of the plaintiff's premises, as they existed on June 15th, 1887, have not been changed by the erection of the viaduct, and the said surfaces of said streets remain as before, open to the public, except for the obstruction by the columns of the viaduct as before stated."

It is thus apparent that the change-of-grade cases have no application.

It is to be said of these cases that they involve a principle that has been condemned in many jurisdictions and the hardship of which has been cured in some of the states by constitutional amendment providing for the payment of such damages.   It is a doctrine which ought not to be extended.

In *Reining* v. *N. Y., L. & W. Ry. Co.* (128 N. Y. 157, 164) Judge Andrews, in applying the law of the elevated railroad cases, as laid down in the *Story* case, said : "It is no longer open to debate in this state that owners of lots, abutting on a street, the fee of which is in the municipality for street use, although they have no title to the soil, are nevertheless entitled to the benefit of the street in front of their premises for access and other purposes, of which they cannot be deprived except upon compensation."

I am of opinion that the structure in the case before us is a bridge built along and above a street and cannot be regarded as a "street use."

If such an erection can be permitted to exist, it falls within the doctrine of the elevated railroad cases, and notwithstanding the title of the streets is in the city, the abutting owner is entitled to compensation for such damages as he has suffered.

Cullen, Ch. J., Gray and O'Brien, JJ., concur with Haight, J.; Vann and Bartlett, JJ., read dissenting opinions; Werner, J., absent.

Judgment affirmed.