FRIEL et al. v. CITY OF NEW YORK.

CADE v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. April 19, 1912.)

1. MUNICIPAL CORPORATIONS (§§ 280, 302*)—STREETS—CHANGE OF GRADE.

Under Brooklyn Charter (Laws 1888, c. 583) tit. 19, § 1, as amended by Laws 1895, c. 297, authorizing the board of aldermen to change the grade of a street by a three-fourths vote on the petition of the property owners, or, without such petition, with the consent of the mayor, a resolution adopted by the common council in 1895 changing the grade of a street is ineffective and void where there was no petition of property owners and no formal and affirmative consent by the mayor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 740–743, 803, 807; Dec. Dig. §§ 280, 302.*]

2. MUNICIPAL CORPORATIONS (§ 302*)—ORDINANCES—APPROVAL BY MAYOR—
NECESSITY.

Brooklyn Charter (Laws 1888, c. 583) tit. 2, § 9, providing that ordinances and resolutions of the common council shall take effect as if signed by the mayor if he fails to return them to the common council within 10 days after their transmission to him, related only to the general legislative powers of the common council, and did not apply to an ordinance changing a street grade which under title 19, § 1, must have been passed by a three-fourths vote on a petition of the property owners or with the consent of the mayor, since either the petition or the mayor's affirmative consent is jurisdictional.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 803–807; Dec. Dig. § 302.*]

3. MUNICIPAL CORPORATIONS (§ 379*)—CHANGE OF STREET GRADE—LIABILITY.

Where the city of New York, without taking any steps to change the legal grade of a street, but acting on the authority of a void ordinance of the former common council of the city of Brooklyn, changed the physical grade of a street, it was liable for damages to abutting property which has been improved with relation to a former lawfully established grade.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 917–919; Dec. Dig. § 379.*]

4. MUNICIPAL CORPORATIONS (§ 385*)—CHANGE OF STREET GRADE—LIABILITY.

Where the grade of a street has been changed by lawful authority, there is no common-law liability for consequential damages therefrom.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 925–928; Dec. Dig. § 385.*]

Appeal from Trial Term, Kings County.

Actions by John Friel and another and by Edward Cade against the city of New York. From a judgment for defendant, plaintiffs appeal. Reversed and new trials granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Royal E. T. Riggs, of New York City, for appellants.

Charles J. Nehrbas, of New York City (Terence Farley, on the brief), for respondent.

CARR, J. These two actions were tried together as one, and the separate appeals from the judgments dismissing the complaints come before this court on one record. The plaintiffs and appellants were the owners of separate pieces of improved real property situate on Meserole avenue in the borough of Brooklyn. In 1905 the city of New York repaved that street, and in the progress of said work it changed the physical grade of the highway by raising the actual grade several feet in front of the premises of the plaintiffs, with a result that considerable damage was caused to the plaintiffs' properties. For this damage they sought separate recoveries, and on the trial of their actions their complaints were dismissed.

[1] The only question involved on this appeal is purely one of law. it appears that the grade of Meserole avenue was established originally in 1854 and that the street was paved in 1874 according to the established grade. On the property of the respective plaintiffs houses were built some time previous to 1883, and with reference to the then

existing grade. In 1895 the common council of the city of Brooklyn adopted an ordinance or resolution to regrade Meserole avenue according to a map which accompanied the resolution. Nothing was done to change the actual physical grade until 1905, when the city of New York, acting exclusively upon the assumed change of legal grade made or attempted to be made in 1895, caused the change in actual grade which resulted in damages to the plaintiffs. The appellants contend that the legal grade, as it existed in 1895 and since 1854, had not been changed in 1895 in accordance with law. The power to change the established grades of streets in the former city of Brooklyn was vested in its common council by section 1 of title 19 of its charter (chapter 583 of the Laws of 1888, as amended by chapter 297 of the laws of 1895). Under this provision of statute such change was authorized upon a petition of the majority of the owners of the property to be affected, or of the owners of a majority of the property to be affected, and upon a three-fourths vote of the board of aldermen, or, where there was no petition of the property owners, then upon a three-fourths vote of the board of aldermen and the consent of the mayor. It is conceded that when the common council adopted the resolution of 1895, there had been no petition of property owners and no formal and affirmative consent of the mayor to the resolution. Under these circumstances, the resolution of 1895 would appear to be ineffective and void, unless there be some other provision of statute which can save the resolution.

[2] It is contended that the general provisions of the then Brooklyn charter which appear in section 9 of title 2 of that act, relating to the powers of the common council, apply to this situation. This last-cited title of the act applies generally to the powers, duties, and procedure of the common council. Section 9 thereof provides that, when an ordinance or resolution has been adopted, it should be transmitted to the mayor, who, if he approves it, "shall sign it," and, if he disapprove it, shall return it with his objections. If he disapprove, then a procedure is prescribed whereby the common council may then by a two-thirds vote of the entire elected body repass the same and it shall take effect as a law. The section further provides as follows:

"And if such ordinance or resolution shall not be returned by the mayor within ten days after he has received it, it shall become a law in like manner as if he had signed it."

It is conceded that the resolution had not been returned by the mayor in 1895, and it is claimed that it became a law under the provision of the statute as quoted. I think this contention cannot be sustained. Title 2 of the Brooklyn charter related to the general legislative powers of the common council, while title 19 related to special powers and special objects. Under title 2, the common council might adopt an ordinance or resolution by a majority vote of a quorum which consisted, as the statute provided, of a majority of the elected members. Under title 19, a three-fourths vote was required for the objects therein specified. Again, the common council under title 2 could act always on its own initiative without petition from anybody, while under title 19 it could act on petition of property owners, and

then a formal consent by the mayor was unnecessary, or without such petition of property owners it could not act at all without the consent of the mayor. Section 9 applies to the general duties specified in title 2, but not to the special powers and duties covered by title 19. Under the latter title, either a petition of the property owners or the affirmative consent of the mayor was jurisdictional.

[3] As the city of New York itself took no steps to change the legal grade of Meserole avenue, but relied entirely on the act of the common council of Brooklyn, taken in 1895, it changed the physical grade of Meserole avenue without lawful authority.

[4] While it is well settled that, where a physical change of grade of a street is made with lawful authority, there is no common-law liability for consequential damages (Sauer v. City of New York, 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717), yet, if said physical change of grade be made by the city without lawful authority, then it becomes liable for damages to the abutting property which has been improved with relation to a former legally established grade (Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. E. 821; Fuller v. City of Mount Vernon, 171 N. Y. 247, 63 N. E. 964.

It follows that the judgments should be reversed, and new trials granted; costs to abide the event. All concur.