THE PEOPLE OF THE STATE OF NEW YORK ex rel. GERTRUDE CRANE, as Administratrix, etc., of GEORGE W. SAUER, Deceased, Relator, *v.* WILLIAM C. ORMOND, President, and JACOB J. LESSER and ST. GEORGE B. TUCKER, as and Constituting the Board of Assessors of the City of New York, and THE CITY OF NEW YORK, Respondents.

First Department, May 18, 1917.

Municipal corporations — city of New York — erection of elevated viaduct equivalent to change of street grade — statutory right of abutting owner to damages.

Where an elevated viaduct supported upon columns was erected over a street in the city of New York for use by the general public as a means of travel there was, legally, a change of grade, although the street below was left at its original grade.

In the absence of statute giving a right thereto, no damage can be recovered by an abutting owner because of such change of grade.

But when the city of New York erected said viaduct over One Hundred and Fifty-fifth street, pursuant to the authority of chapter 576 of the Laws of 1887, which viaduct was accepted by the city as completed in 1893, there was a statute in force (Laws of 1882, chap. 410, § 873) which required the board of assessors to estimate the loss and damage which each owner might sustain by reason of such change in grade and to make a just and equitable award of the amount of such damage.

Hence, there being no limitation as to the time within which the board must act, and as section 951 of the New York charter, as amended, provides that all cases where a change of grade has been made prior to said act shall be governed by the laws in force at the time such change of grade was completed and accepted by the city authorities, an abutting owner is entitled to a determination of his claim for damages resulting from the erection of said viaduct, and, on certiorari brought for that purpose, the court will direct the board of assessors to hear and determine the claim upon the merits.

The city having first resisted the claim for damages upon the theory that there was a change of grade on the erection of said structure, cannot afterwards, in order to defeat the claim, take the position that there was no change of grade.

CLARKE, P. J., and SMITH, J., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 19th day of December, 1916, directed to William C. Ormond and others, commanding them to certify and return to the office of the clerk of the county of New York all and singular

their proceedings had in respect to the relator's claim for damages.

*John M. Harrington* and *Herbert H. Gibbs,* for the relator.

*Charles J. Nehrbas,* for the respondents.

PAGE, J.:

From July 1, 1886, to March 21, 1900, George W. Sauer, the relator's intestate, was the owner in fee of lands at the southwesterly corner of One Hundred and Fifty-fifth street and Eighth avenue in the borough of Manhattan, city of New York. During that period and until February, 1898, when they were destroyed by fire, there stood frame buildings, which were used as a place of public resort, recreation and amusement. Title to the fee to the land included within the lines of Eighth avenue and One Hundred and Fifty-fifth street, adjoining the premises, had been acquired by the city of New York for street purposes, and the street and avenue graded according to their legally established grade, long prior to the year 1886. Bradhurst avenue is the next street to the west of Eighth avenue. To the west of Bradhurst avenue, at its intersection with One Hundred and Fifty-fifth street, and substantially parallel with Bradhurst avenue, there is a bluff, the top of which is about seventy feet above the grade of Bradhurst avenue. From the foot of the bluff easterly to the Harlem river the land is substantially on a level plane. One Hundred and Fifty-fifth street had never been regulated or graded westerly from its intersection with Bradhurst avenue to the face of the bluff. By chapter 576 of the Laws of 1887 the city of New York was authorized to improve and regulate the use of One Hundred and Fifty-fifth street, and for that purpose to construct an elevated iron roadway, viaduct or bridge for the passage of animals, persons, vehicles and traffic from St. Nicholas place to Macomb's Dam bridge. Work was commenced on this viaduct August, 1890, and accepted by the city as complete October, 1893. One Hundred and Fifty-fifth street is one hundred feet in width. The viaduct is built upon two lines of iron columns, which are eighteen inches square, and are placed in the roadway of the street, and are about forty-three feet between the center

of the columns, measuring from east to west, and about forty feet from north to south, and are about ten feet from the curb on either side of the street.    The platform of the viaduct is from fifty to fifty-eight feet and six inches above the pavement of the street in front of the premises, and has an extreme width of about sixty-three feet, and is about eighteen feet distant from the building line of the premises.    The platform has a roadway for vehicular traffic and on each side a walk for pedestrians; it is paved with asphalt and paving blocks and is a solid structure.    On Eighth avenue, in front of the premises, it extends southerly about thirty feet, and has two supporting columns eighteen inches square, placed upon the sidewalk, and about fifteen feet from the building line of the premises, the platform extending to within ten feet of the premises.    A stairway to the platform is built from within the lines of One Hundred and Fifty-fifth street in front of the premises to the southwesterly corner of One Hundred and Fifty-fifth street and Eighth avenue.    The surfaces of One Hundred and Fifty-fifth street and of Eighth avenue as they existed on June 15, 1887, have not been changed, and the surfaces of said streets remain as before, open to the public, except for the obstruction of the columns and stairway.    The viaduct, during the ownership of relator's intestate of the premises, was used solely as a public highway for horses, vehicles and pedestrians and for no other purpose.    Recognizing the fact that damage had been suffered by relator's intestate, for which compensation had not been made, the Legislature passed an act (Laws of 1894, chap. 512) empowering the board of estimate and apportionment of the city of New York, in its discretion, to examine into the claim for damages and in its discretion to make an appropriation for the payment thereof.    No action was taken by the said board.    The relator's intestate began two separate actions against the city. The first a common-law action for damages in which he recovered a judgment, which was reversed.    (*Sauer* v. *Mayor*, 44 App. Div. 305.)    The second an equity action in which he was defeated.    (*Sauer* v. *City of New York*, 90 App. Div. 36; 180 N. Y. 27; 206 U. S. 536.)

In the case of *Sauer* v. *City of New York* (180 N. Y. 27) the court held that the plaintiff could not recover for the impair-

ment of his easement of light, air and access, upon the theory of the elevated railroad cases. It intimated that he might have a remedy under existing statutes. The court said (p. 30): "The fee of the street having been acquired according to the provisions of the statute, we must assume that full compensation was made to the owners of the lands through which the streets and avenues were laid out, and that thereafter the owners of lands abutting thereon hold their titles subject to all of the legitimate and proper uses to which the streets and public highways may be devoted. As such owners they are subject to the right of the public to grade and improve the streets, and they are presumed to have been compensated for any future improvement or change in the surface or grade rendered necessary for the convenience of public travel, especially in cities where the growth of population increases the use of the highways."

The court thus justified the appropriation of the plaintiff's easement on the theory applicable to change of grade. This clearly appears from the opinion of the United States Supreme Court (206 U. S. 536, 544): "The State courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel and not devoted to the exclusive use of a private transportation corporation, is a legitimate street improvement equivalent to a change of grade; and that, as in the case of a change of grade, an owner of land abutting on the street is not entitled to damages for the impairment of access to his land and the lessening of the circulation of light and air over it." And is emphasized by this court, Mr. Justice SCOTT writing: "In *Sauer* v. *City of New York* (90 App. Div. 36; 180 N. Y. 27; 206 U. S. 536) the plaintiff claimed consequential damages to his property abutting upon One Hundred and Fifty-fifth street, because of the erection in the street of an elevated viaduct supported upon high iron columns, leaving the street at its original grade in front of the plaintiff's property undisturbed, except for the presence of the columns. This was held in every court to constitute a change of grade " (*People ex rel. City of New York* v. *Hennessy*, 157 App. Div. 786, 787; affd., 210 N. Y. 617), and the Court of Appeals have also so stated: "It was held in that case [*Sauer*] * * * that it was a change in the grade of the streets within the meaning of the

principle just referred to." (*Smith* v. *Boston & Albany R. R. Co.*, 181 N. Y. 132, 137.) In the *Hennessy* case, *People ex rel. City of New York* v. *Sandrock Realty Co.* (149 App. Div. 656; affd., 207 N. Y. 771), relied upon by the respondents, is distinguished, and it is pointed out that the statute there under consideration limited the right to recover damages for the change in grade to certain of the property affected, which did not include the respondent's property " on the theory apparently that, in consequence of the widening of the avenue above that street, no injury would be done to the street easements of abutting property" (p. 788). In my opinion that case should be limited as an interpretation of the particular statute then under consideration and not as declaring a general principle.

It is well settled that there can be no damages recovered by an abutting property owner because of a change of grade unless a right thereto is given by statute.

At the time the change of grade was made in this case there existed a statute that required the board of assessors to estimate the loss and damage which each owner will sustain by reason of such change and to make a just and equitable award of the amount of such loss or damage. (Consol. Act [Laws of 1882, chap. 410], § 873.) In this statute there was no limitation as to time within which the board should act. Section 951 of the Greater New York charter (Laws of 1897, chap. 378 [Laws of 1901, chap. 466], as amd. by Laws of 1912, chap. 483; Laws of 1915, chap. 537, and Laws of 1916, chap. 516) provides that all cases where a change of grade has been made prior to the taking effect of that act shall as to the liability to make compensation for damages caused by such change " be governed by the laws in force at the time such change of grade was completed and accepted by the city authorities." The method of assessing such damages is prescribed in said section and a limitation within which to file claims was established. Within the time thus limited the relator filed her claim. The board of assessors have dismissed the claim for lack of jurisdiction. The claim comes within the statute and the board of assessors have power to determine the damage.

In order to defeat Sauer's claim for damages on the theory of the elevated railroad cases that his easement of light, air

and access had been impaired, the city took the position that there was a change of grade. Now to defeat a claim for damages for change of grade they argue that there has been no change of grade.

The courts adopted the city's first theory, and it should not be allowed to change its position now.

The writ should be sustained, the determination of the board of assessors annulled, and the relator's claim remitted to the board with a direction to hear and determine the same upon the merits, with fifty dollars costs and disbursements.

SCOTT and DAVIS, JJ., concurred; CLARKE, P. J., and SMITH, J., dissented.

SMITH, J. (dissenting):

The relator's premises are on the southwest corner of One Hundred and Fifty-fifth street and Eighth avenue. Between July 14, 1890, and October 2, 1893, the city of New York constructed over portions of One Hundred and Fifty-fifth street and Eighth avenue a viaduct connecting St. Nicholas place with Macomb's Dam bridge. St. Nicholas place is at the top of a bluff which rises several blocks west of the property in question and Macomb's Dam bridge crosses the Harlem river several blocks east of the property. The viaduct in front of the property is from fifty to fifty-eight feet above the surface of One Hundred and Fifty-fifth street. The surfaces of One Hundred and Fifty-fifth street and of Eighth avenue in front of the premises have not been changed by the construction of the viaduct, and they remain as before, open to the public, except for the obstruction of the columns supporting the viaduct. The viaduct is used as a public street for foot passengers and vehicular traffic.

The fee to the land in the street and avenue was acquired by the city for street purposes, and they had been duly graded and paved prior to June 15, 1887, on which date by virtue of chapter 576 of the Laws of 1887 the city was authorized to construct the viaduct in question. This viaduct was under construction from 1890 to October 2, 1893, when it was accepted as complete by the city. By the construction and maintenance of the viaduct the easements of light, air and access appurte-

nant to said premises have been diminished and the market value of the premises depreciated. On May 8, 1894, by chapter 512 of the Laws of 1894, the board of estimate and apportionment was authorized in its discretion to examine the claim of relator's intestate for damages and to make an appropriation therefor, to be paid by the comptroller. No action was taken under this statute by the board of estimate and apportionment. Thereafter Sauer, the relator's intestate, brought a common-law action to recover against the city damages suffered to the property by reason of the erection of the viaduct. At Trial Term Sauer recovered a judgment for $30,000. This was reversed by this court for the improper reception of evidence. Sauer, without a retrial of the law action, sought then in equity to enjoin the use of the viaduct as wrongfully erected. At Special Term his complaint was dismissed. This court· upon appeal affirmed that judgment, holding that the damages to this land were *damnum absque injuria.* (*Sauer* v. *City of New York*, 90 App. Div. 36.) In the opinion it was stated: "The surface of the street below as it existed prior to the construction of the viaduct has not been changed, and it remains open and unobstructed for public travel, except by these stairways and pillars." At the close of the opinion Mr. Justice LAUGHLIN, writing for a unanimous court, said: "The plaintiff has no easement for light, air and access, as against the public, which will enable him to enjoin the making of any changes or alterations, in the street authorized by the Legislature to facilitate public travel. *This being the character of the improvement made,* the action cannot be maintained and the complaint was properly dismissed." Upon appeal to the Court of Appeals the judgment was affirmed (180 N. Y. 27). The prevailing opinion in the Court of Appeals, written by Judge HAIGHT, declares the right of the city to alter a street for the purpose of facilitating public travel without compensation to abutting owners. Judges VANN and BARTLETT dissented, holding that the erection of this viaduct was not such a street use as was lawful without the making of compensation. An extract from the dissenting opinion of Judge BARTLETT is significant, however, upon the question here raised. Judge BARTLETT said: "In the case at bar there is no change of

grade; it is stipulated in the case as follows: 'The grade and surfaces of 155th Street and 8th Avenue, in front of the plaintiff's premises, as they existed on June 15th, 1887, have not been changed by the erection of the viaduct, and the said surfaces of said streets remain as before, open to the public, except for the obstruction by the columns of the viaduct as before stated.' It is thus apparent that the change-of-grade cases have no application." Upon certiorari to the Supreme Court of the United States the determination of the Court of Appeals was confirmed (206 U. S. 536). The opinion of the Supreme Court of the United States in part reads: " The State courts have uniformly held that the erection over a street of an elevated viaduct, intended for general public travel and not devoted to the exclusive use of a private transportation corporation, is a legitimate street improvement *equivalent to a change of grade; and that, as in the case of a change of grade,* an owner of land abutting on the street is not entitled to damages for the impairment of access to his land and the lessening of the circulation of light and air over it." This decision in the United States Supreme Court was handed down May 27, 1907.

By section 873 of chapter 410 of the Laws of 1882 there was imposed upon the board of assessors the duty to estimate the loss and damage sustained or to be sustained by each owner of land fronting on any street north of Sixty-second street (the grade of which was established after March 4, 1852) by reason of a change of grade of any such street in whole or in part, and to make a just and equitable award of the amount of such loss or damage to such owner, both in respect of the land and in respect of the improvements thereon. It is under this statute that this relator, twenty-three years after the completion of this viaduct and ten years after the decision in the United States Supreme Court, during which nothing has been done, seeks to recover from the city for a change of grade of the street.

That this does not constitute a change of grade would seem to me to be a matter of first impression. The street in front of the relator's premises has neither been raised nor lowered; it remains to-day as it existed prior to the construction of the viaduct, adapted for use and actually used for a public street.

It is true that in *People ex rel. City of New York* v. *Hennessy* (157 App. Div. 786) the prevailing opinion states that in the equity case brought by relator's intestate in this court, in the Court of Appeals and in the United States Supreme Court this change was held to be a change of grade. Also, in *Smith* v. *Boston & Albany R. R. Co.* (181 N. Y. 137) Judge O'BRIEN referred to the *Sauer Case* (180 N. Y. 27) and said: "It was held in that case that where the original street was elevated upon columns fifty feet above the original surface that it was a change in the grade of the streets within the meaning of the principle just referred to." In neither of these cases, however, was the statement necessary to the decision, and an examination of the cases themselves discloses that neither in this court nor in the Court of Appeals nor in the United States Supreme Court was this construction stated to be a change of grade. In the United States Supreme Court it was significantly stated to be "equivalent to a change of grade" for the purposes of the legal question there discussed. In *People ex rel. City of New York* v. *Hennessy* (*supra*) it was held that under the special statute under which the construction was made damages were specifically allowed for injury to the abutter by reason of the impairment of light, air and access, and the opinion says: "The scheme of the present act is quite different and plainly contemplates an award of damages, *as for a change of* grade, to the owners of lands abutting upon Third avenue." In *Smith* v. *Boston & Albany R. R. Co.* the question at issue was the liability of towns for an actual change of grade of the street made necessary by the construction of an underpass under a railroad and the lowering of the surface of the street itself for that purpose.

In *People ex rel. City of New York* v. *Lyon* (114 App. Div. 583) the question arose upon certiorari to the board of assessors to review their determination refusing to allow the relator damages for a change of grade in the building of the approaches to the Third avenue bridge across the Harlem river. There, as here, the original grade of the street remained unchanged. The approach to the bridge, however, was constructed upon abutments, which abutments together with the stairways deprived the relator of light, air and access.

It was there held that under that statute in award-
ing damages to private owners for lands condemned for
the erection of the Third avenue bridge across the Harlem
river in the city of New York the commissioners should award
not only the value of the lands actually taken, but the con-
sequential damage to the remainder of the lands not taken,
caused by the shutting off of access thereto by the building of
bridge approaches; and that when owners whose land is taken
have proved before the commissioners the consequential damage
to lands not taken, the presumption is that the award made by
the commissioners included such consequential damage, and a
subsequent additional award by the board of assessors made on
the theory that the grade in front of the premises was changed
by the building of the bridge approaches is unauthorized. In
the prevailing opinion it is said: " The city has built upon its
own land a structure designed for travel in the same manner
as a street would be traveled it is true, but it has not in any
legal sense changed the grade of One Hundred and Thirtieth
street. That street remains at its original grade. If the
approach be deemed a street its construction was the laying out
of a new one, and no change of grade from that originally
established has ever been made. Nor can the building of the
approach be deemed a widening of One Hundred and Thirtieth
street at a different grade. It is a separate and distinct
structure from the street itself. If the respondents have not
received compensation for the erection of the approach and the
destroying of access to their lands it is unfortunate, but we
see no ground upon which the present award can be justified."
In *People ex rel. City of New York* v. *Sandrock Realty Co.*
(149 App. Div. 651) the question arose upon the certiorari to
review the proceedings of the board of assessors of the city of
New York in awarding damages caused by a change of grade
of Willis avenue in erecting a bridge across the Harlem river
pursuant to the Laws of 1894, chapter 147, and Laws of 1897,
chapter 664. By chapter 147 of the Laws of 1894 the Legis-
lature authorized the commissioner of public works of the city
of New York to construct a bridge with suitable approaches
from a point at the intersection of One Hundred and Twenty-
fifth street and First avenue northeasterly across the Harlem

river to and along Willis avenue to One Hundred and Thirty-fourth street, and to make such changes in the grade lines of the streets or avenues approaching said bridge as might be necessary. Specific provision was made in the act for the granting of compensation to abutting owners upon Willis avenue from the bridge up to One Hundred and Thirty-second street. The next intersecting street is the Southern boulevard, and the second intersecting street is One Hundred and Thirty-fourth street. The approach to the bridge as finally completed in August, 1901, occupied seventy feet of the center of Willis avenue, which then was one hundred feet in width. For the purpose of widening Willis avenue between One Hundred and Thirty-fourth street and Southern boulevard, the city on May 22, 1897, took title to a strip thirty-five feet in width on each side, thus making on each side of the bridge approach a street fifty feet in width. The relators' lots are upon the east side of Willis avenue between Southern boulevard and One Hundred and Thirty-fourth street. A strip thirty-five feet in width was taken from their lots, for which they were awarded the sum of $10,000 for the land taken. Confessedly no award had been made to these relators either for a change of grade or for impairment of light, air and access. Thereupon the abutters upon Willis avenue between One Hundred and Thirty-fourth street and the Southern boulevard from whose land a strip thirty-five feet wide had been taken, proceeded before the board of assessors to have estimated their damage for the destruction of light, air and access by reason of this erection in the center of Willis avenue. Mr. Justice MILLER, in writing for the court, said: "It is plain that, when the original act was passed, it was thought possible that a plan might be adopted which would necessitate a change of grade of the streets intersecting Willis avenue; and, with that possibility in mind, the Legislature provided for damages to property owners affected by such change of grade. While the construction of the viaduct or approach in the center of the street may be deemed a regulation thereof, it is plain that it was not the kind of change of grade that the Legislature provided for by section 3. *The street in front of the claimant's premises*

*remains at the old grade.* In the center of it, as widened, is a structure which interferes with the claimant's easements of light, air and access. The Legislature did not provide for the case, and the court cannot supply that omission by adopting a construction which the statute was plainly not intended to bear."

The construction in front of the relator's premises on Willis avenue was as much a change of grade as is the construction in the case at bar. It was held in that case that the relator had no remedy because its damages were not specifically provided for by the act authorizing the construction. That case was affirmed in the Court of Appeals in 207 New York, 771. So in the case at bar the construction of this viaduct was authorized by chapter 576 of the Laws of 1887 and no provision whatever was made in that act for damages to abutting property owners arising from the deprivation of light, air and access. If this relator has her remedy under the Consolidation Act of 1882 cited, so had the relator in the *Sandrock* case, and the denial of any remedy to the relator in that case in the absence of specific provision therefor in the act authorizing the construction is, to my mind, a controlling authority for the denial to the relator in the case at bar of any remedy in the absence of specific provision in the act authorizing the construction of this viaduct.

Moreover, the enactment of chapter 512 of the Laws of 1894 is a legislative interpretation of the law of 1882 cited. The Legislature would never have given to the board of estimate and apportionment the discretion to compensate the abutter if the abutter might collect his damages under the statute of 1882. Because he was remediless under existing law the act of 1894 was passed for his benefit and to that law alone must he now look for his remedy.

In my judgment the determination should be affirmed, and the writ dismissed, with costs.

CLARKE, P. J., concurred.

Writ sustained, determination of the board of assessors annulled, and claim remitted to said board as directed in opinion, with fifty dollars costs and disbursements. Order to be settled on notice.