William R. Roy, J.
The defendants in each of the above-entitled actions have moved, pursuant to CPLR 3211, to dismiss the complaints on the ground that they fail to state a cause of action. Since both cases involve common questions of law and fact, this court will consider them together.
In considering these motions to dismiss, the court will apply the rules of liberal construction of the pleadings (Walkovsky v. Carlton, 18 N Y 2d 414; CPLR 3026); the acceptance as true of the material allegations of fact contained in the complaints and the truth of any reasonable inferences that may be drawn therefrom (Garvin v. Garvin, 306 N. Y. 118); and' that if any cause of action can be spelled out from the facts alleged, the motion must be denied (Dulberg v. Mock, 1 N Y 2d 54).
The facts giving rise to the instant litigation are without dispute. The plaintiffs in each action claim to be owners or parties in interest to real property situated within a 101 block area within the City of Syracuse and known as the Syracuse Hill Neighborhood Development Program. This is a designated urban renewal area and contains over 1,600 individual parcels of land.
Defendant, City of Syracuse, is the governing body and the Syracuse Urban Renewal Agency is the department delegated by the city to carry out the functions vested in the agency which was established pursuant to article 15-A of the General Municipal Law of the State of New York.
A brief review of the history of the Syracuse Hill Neighborhood Development Program will be helpful in the determination of these motions.
Beginning in 1962 comprehensive urban renewal plans were commenced in the form of a general neighborhood renewal plan in the area in question.
In April of 1964 the Common Council of the City of Syracuse approved an ordinance authorizing city sponsorship of an application to the Federal Government for a planning grant in connection with the above urban renewal project and thereafter received such grant for the study. The properties owned by the *126 plaintiffs in both of the above-entitled actions were within the planning grant area.
On September 12, 1966, the Common Council of the City of Syracuse approved an initial partial acquisition for purposes of the plan.
On October 14, 1966, the city submitted a plan of acquisition for another part of the renewal area, which' plan included' the property of the plaintiffs, Bluman, in the second' action. It is conceded that at no time was the property of the plaintiffs in the first action ever included within the plan.
On June 10, 1969, the Common Council of the City of Syracuse changed the project from General Neighborhood Renewal Plan to Neighborhood Development Plan and1 this was approved by the Common Council of the city on June 22,1969. It is undisputed that for more than 10 years the above events and activities associated therewith were the subject of wide and frequent publicity in the news media in the City of Syracuse and were the subject of frequent correspondence and conferences between the parties in both of the above-captioned' actions.
In implementing the foregoing plans and authorizations the defendants have acquired title to many parcels located within the urban renewal area and to several parcels in each of the blocks located within the city, in which the plaintiffs’ properties are located’.- Many buildings have been demolished in furtherance of the plan and others' have been boarded up.
The plaintiffs, feeling aggrieved as a result of the action of the city and the agency, commenced these actions by a summons and complaint dated' October 5, 1973.
In each of the complaints the history of ownership of the property is alleged and the activities of the city and the agency as set forth above were outlined.
The complaints in each action contain similar allegations with respect to the activities of the city. Both of the complaints contain the following paragraphs:
“ As a result of the inordinately long and dilatory tactics of the defendants, the vicinity of the plaintiff’s property has suffered a condemnation blight which has transformed the area into one which is highly undesirable for either residential or commercial purposes. The area has become a high-crime area, vandalism is rampant, and it is not safe to live or work there. Both residential and' commercial tenants have moved from the area, the plaintiff has lost substantial amounts of rental income, he has been placed in a special insurance pool which has forced him to pay excessive premiums, he has been compelled to expend *127 monies to protect the property from vandalism, and his property has been drastically reduced in value.
“ By reason of the foregoing the plaintiff has been deprived of due process of law and of the equal protection of the laws, in violation of the Fourteenth Amendment of the United States Constitution and of Article I, Sections 6 and 11 of the New York State Constitution.”
In the Bluman complaint there is an allegation that the property was designated for acquisition but that no proceedings were commenced to condemn the property, nor was any step taken to compensate the Blumans for the damage allegedly sustained by them.
The Fisher complaint contains an allegation to the effect that although their property was in the urban renewal area, no proceedings have been commenced to condemn the property nor has anything been done to compensate plaintiffs in that action for the damage allegedly suffered by them.
Thus, the only difference between the two actions is that in the Bluman case the property was designated for condemnation, but has not as yet been taken and in the Fisher case the property was not designated' for condemnation.
It is the plaintiffs’ contention, in both actions, and, as appears by the complaints, that as a result of the actions of the defendants, the vicinity of the plaintiffs’ property has suffered a “ condemnation blight ”. This, they allege, has transformed the area into one which is highly undesirable for either residential or commercial purposes; it has become a high crime rate area where vandalism is rampant and where it is not safe to live or work. Plaintiffs further allege that tenants have moved from the area, resulting in loss of rental income. Further, plaintiffs claim that they have been forced to pay excessive insurance premiums and' that they have been compelled to expend moneys for the protection of their property from vandalism and that the properties have been reduced' in value.
The plaintiffs contend that they should be compensated, because of the so-called condemnation blight, for loss of income from the properties, depreciation in value, and additional costs incurred in protecting the property from vandalism, as well as increased insurance premiums. They contend that the actions of the defendants amount to a constitutional deprivation of due process and equal protection of the laws pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.
It is important to point out that in both of these actions the plaintiffs are not claiming that the defendants have taken their *128 property, either by de jure or de facto (inverse) condemnation. Nor do they seek to compel the defendant to condemn the properties. As this court reads the complaints, the plaintiffs claim that they should be compensated for damages sustained' by them as a result of the activities of the defendants in creating what is referred to as a “ condemnation blight ” in the vicinity of their properties.
In order to understand and properly evaluate the complaints otihe plaintiffs, it is necessary to examine the law in connection with condemnation and appropriation. As was stated in City of Buffalo v. Clement Co. (28 N Y 2d 241, 255): “ ‘ condemnation blight ’ relates to the impact of certain acts upon the value of the subject property. It in no way imports a taking in the constitutional sense, but merely permits of a realistic valuation of the condemned property in the subsequent de jure proceeding.” It thus can b.e seen that condemnation blight is not a .cause of action, but in reality is a rule of evidence of valuation of real property that has been the subject of a taking in condemnation, die jure, or de facto.
The Fifth Amendment to the United States Constitution provides, as is pertinent to this decision, “ nor shall private property be taken for public use, without just compensation.”
Section 1 of the Fourteenth Amendment, so far as is pertinent to this decision provides, “ nor shall any State deprive any person of life, liberty, or property, without due process ”. Section 6 of article I of the New York State Constitution provides, as far as is pertinent to this decision, as follows: “ no person shall be deprived of life, liberty or property without due process of law.”
It is in light of these provisions of the Federal and State Constitutions and upon the case law that we must determine whether the actions of the defendants, although concededly not constitutiíig a “ taking ” of property in its accepted legal sense, i.e., de facto or de jure appropriation, give rise to a cause of action for diminution in property values and increase in costs of maintenance and protection of those properties.
The Fifth Amendment provides the basis for compensation for property taken for public use. This provision refers only to direct appropriations (Laycock v. Kenney, 270 F. 2d 580, cert. den. 361 U. S. 933), and was never supposed to have any bearing upon or inhibit laws that indirectly work harm and loss to individuals. (Knox v. Lee, 79 U. S. 457.)
Furthermore, as was stated in Danforth v. United States (308 U. S. 271. 285): “ a reduction or increase in the value of prop *129 erty may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents .of ownership. They cannot be considered as a ‘ taking ’ in the constitutional sense.”
It thus can be seen that under the Federal law the actions of the defendants do not amount to a “ taking ”. Inasmuch as these acts do not amount to a “ taking ”, under the Federal law, then there can be no deprivation of constitutional due process. (Danforth v. United States, supra.)
In the landmark New York case of City of Buffalo v. Clement Co. (28 N Y 2d 241, 257, supra), Judge Scileppi, after a review of authorities, stated the policy of the State of New York is: ‘ ‘ to deny recovery in the absence of a substantial impairment of the claimant’s right to use or enjoy the property at any time prior to the date of final appropriation. Accordingly, the mere announcement of impending condemnation, coupled as it may well be with substantial delay and damage, does not, in the absence of other acts which may be translated into an exercise of dominion and control by the condemning authority, constitute a taking so as to warrant awarding compensation.”
In addition, the Court of Appeals of the State of New York has previously stated: “ But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its usé, are universally held not to be a taking within.the meaning of the constitutional provision. They do not entitle the owner of such property to compensation * * * or give him any right of action.” (Sauer v. City of New York, 180 N. Y. 27, 33, affd. 206 U. S. 536.)
Assuming the allegations of the complaint's to be true, there is no question that the plaintiffs in each of the above-entitled actions have suffered damages. It may very well be that the damages that the plaintiffs would be able to prove might far exceed the fair market value of the properties to which the owners might be entitled in condemnation proceedings. However, the mere fact that someone has suffered damage does not give rise to a cause of action, unless the cause of action has a legal basis. The items of damages alleged by the plaintiffs were not actually taken by the defendants. They are not “ property ” within the contemplation of the eminent domain clauses of the Federal or State Constitutions.
This court is unable to find any case, Federal or State, which supports the theory upon which plaintiffs base their cause of action.
*130 Plaintiffs, in their brief, cite the case of Luber v. Milwaukee County (47 Wis. 2d 271), in support of their position. That case involved the interpretation of a statute which purported to limit the amount of rental loss which might be recovered in a condemnation case. The court held in that case that the statute was unconstitutional insofar as it limited compensation for rental loss, stating that (p. 283) “ one’s interest in rental loss is such as is required to be compensated under the ‘ just compensation ’ clause of art. 1, sec. 13, Wisconsin Constitution Sec. 32.19(4), Stats.”.
What the court was determining in that case was that once you have determined what is “ just compensation ”, any attempt to limit that “ just compensation ” would be unconstitutional.
The other cases cited by the plaintiffs in their brief involve instances of either de jure or de fact'o appropriation and did not involve the precise question here presented for determination by this court. The case of Levine v. City of New Haven (30 Conn. S. 13), cited by the defendant, involved a complaint which the court determined to be one for inverse condemnation (a de facto taking). The case thus involved the question of whether the acts of the City of New Haven constituted a “ taking ” in the constitutional sense. That case differs from the above-captioned cases in that there is no claim by either plaintiff that the acts of the defendants constitute a “ taking ”.
It might be pointed out that once it has been determined that a “ taking ” has occurred, then all of the rights of the plaintiffs to constitutional due process must be observed. This necessarily involves notice to the property owner and an opportunity for him to be heard on the question of “ just compensation ”.
Prior to a determination that property has been taken within the constitutional sense, that is by a direct appropriation (Laycock v. Kenney, 270 F. 2d 580, supra), be it de jure or de facto, there is no constitutional deprivation of due process. (Danforth v. United States, 308 U. S. 271, supra; City of Buffalo v. Clement Co., 28 N Y 2d 241, supra.)
Although the court is‘ sympathetic to the plight of the plaintiffs in these cases, it finds no constitutional or case authority in support of the causes of action alleged in the complaints. As harsh as it may be, the principle of damnum absque injuria prevails, and the complaints in each of the above-entitled actions are, accordingly, dismissed on the ground that they fail to state a cause of action.