THE PEOPLE OF THE STATE OF NEW YORK ex rel. ARCHITECTS' OFFICES, INC., a Domestic Corporation, Respondent, *v.* WILLIAM C. ORMOND and Others, Constituting the BOARD OF ASSESSORS OF THE CITY OF NEW YORK, Appellants.

First Department, June 16, 1922.

**Municipal corporations — city of New York — change in grade of street by providing for viaduct in center — change did not affect sidewalks or street on both sides of viaduct — abutting owner filing plans and building after adoption of resolution changing grade but before actual change not entitled to damages under Greater New York charter, § 951 — Legislature had power to place limitations on claims for damages for change in grade.**

On an application for a peremptory mandamus order to compel the board of assessors of th city of New York to determine the damages caused to the relator's building by the construction of a viaduct in front thereof, it appeared that on April 2, 1912, the mayor approved a resolution adopted by the board of estimate and apportionment changing the grade of the middle of the street as it then existed, with a view to providing a carriageway passing over intersecting streets, but there was no physical change made in the grade of the street until after the grade was again changed by resolution approved on June 21, 1918. After the adoption of the first resolution the relator filed a plan for the erection of a building on its premises and the building was completed on January 6, 1914. The change of the legal grade in 1912 did not affect the grade of the sidewalks or of the curbs or of the carriageways at the sides of the street and contemplated only the erection of a viaduct forty-two feet in width, leaving twenty-seven feet of carriageway on either side. If the construction of the viaduct had been completed prior to the filing of the plans for the erection of the building, the plans would not have been required to be any different from those pursuant to which the building was erected, and it was not claimed that the change made in 1918 or the construction of the viaduct pursuant thereto instead of according to the grade of 1912 had any material effect.

*Held*, that under section 951 of the Greater New York charter, as amended by chapter 619 of the Laws of 1918, which provides that "An abutting owner who has built upon or otherwise improved his property in conformity with the grade of any street or avenue established by lawful authority, and such grade is changed after such buildings or improvement have been erected,   *   *   * shall be entitled to damages for such change of grade.   *   *   * Except as herein provided, there shall be no liability for originally establishing a grade or for changing an established grade," the relator was not entitled to any damages because of the change of the grade in the center of the street and the construction of said viaduct.

The relator has no constitutional right to recover damages for the change of grade and it is only entitled to such damages as have been expressly authorized by the Legislature, and it was entirely competent for the Legislature, in authorizing claims, to place such limitations thereon as it saw fit.

APPEAL by the defendants, William C. Ormond and others, from a peremptory mandamus order of the Supreme Court, made

at the New York Special Term and entered in the office of the clerk of the county of New York on the 31st day of March, 1922, requiring the defendants, constituting the board of assessors of the city of New York, to determine the damages caused to the relator's building, known as 101 Park avenue, borough of Manhattan, New York, by the construction of the viaduct in the middle of Park avenue between Fortieth street and the Grand Central Terminal at the northerly line of Forty-second street, and to make an award therefor.

*John P. O'Brien, Corporation Counsel* [*Charles J. Nehrbas* of counsel], for the appellants.

*Deering & Deering* [*James R. Deering* of counsel; *James J. Dunn* with him on the brief], for the respondent.

Laughlin, J.:

The petitioner is the owner of premises at the northeasterly corner of Park avenue and Fortieth street, having a frontage on Park avenue of ninety-eight feet nine inches, and on Fortieth street of one hundred and fifty-one feet. In or about the year 1853 Park avenue was opened, and it has been improved and used as a public street with a paved carriageway, curbing and sidewalks. On the 2d of April, 1912, the mayor approved a resolution adopted by the board of estimate and apportionment changing the grade of the middle of the street as it then existed, with a view to providing a carriageway passing over Forty-first and Forty-second streets, and connecting, around the Grand Central Station, with Park avenue to the north; but there was no physical change made in the grade of the street to carry that contemplated improvement into effect until after the grade was again changed by a resolution adopted by the board of estimate and apportionment and approved by the mayor on the 21st of June, 1918. After the adoption of the change of grade in 1912 and on the sixteenth of July that year, the relator filed plans for the erection of a new sixteen-story building on its said premises. The plans were approved and it proceeded with the erection of the building, which was completed on the 6th of January, 1914. The change of the legal grade in 1912 did not affect the grade of the sidewalks or of the curbs or of the carriageway at the sides of the street, and contemplated only the erection of a viaduct forty-two feet in width, leaving twenty-seven feet of carriageway on either side. If the construction of the viaduct had been commenced or even completed prior to the filing of the plans for the erection of the building, it does not appear that the relator's plans for the erection of its building would have been required to be or would have been any different from those pur-

suant to which the building was erected. So far as concerns any damages to the relator's premises or building, it is not claimed that the change of the legal grade in 1918 from the grade established in 1912, or the construction of the viaduct pursuant thereto instead of according to the grade of 1912, had any material effect. The relator filed a claim under section 951 of the Greater New York charter, with the board of assessors, pursuant to an advertisement for claims by the said board after the construction of the viaduct. Its claim was predicated on the changes of grade made by the resolutions of the board of estimate and apportionment in 1912 and 1918, and on the erection of its building in 1914. The relator presented to the board of assessors evidence tending to show that, by the construction of the viaduct, it sustained damages to the extent of upwards of $100,000, and in opposition thereto the city presented evidence that the damages caused to the petitioner's premises and improvements by reason of the construction of the viaduct were not more than about $10,000. The board made certain awards to other property owners, but disallowed the claim of the relator. This proceeding was then instituted. The provisions of section 951 of the charter, so far as here material, as they existed when the resolution changing the grade was adopted in 1912, were as follows: " After the taking effect of this act there shall be no liability to abutting owners for originally establishing a grade; nor any liability for changing a grade once established by lawful authority, except where the owner of the abutting property has subsequently to such establishment of grade built upon or otherwise improved the property in conformity with such established grade, and such grade is changed after such buildings or improvements have been made. In such cases damages occasioned by such change of grade to such buildings and improvements shall be ascertained and assessed in connection with and as a part of the expenses of grading or otherwise improving the street or avenue in conformity with the grade as changed. A grade shall be deemed established by lawful authority within the meaning of this section where it was originally adopted by the action of the public authorities, or where the street or avenue has been used by the public as of right for twenty years and been improved by the public authority at the expense of the public or of the abutting owners. All laws inconsistent herewith are hereby repealed. In case the grade of any such street shall be changed, and the same shall have been regulated and graded according to the new grade, after the certificate of the cost of such regulating and grading shall have been received by the board of assessors, it shall be the duty of the said board to cause to be published in the ' City Record ' and

the corporation newspapers, for at least ten days successively, a notice which shall contain a request for all persons claiming to have been injured by the said change of grade to present, in writing, to the secretary of the board of assessors, their claims, specifying a place where and a time when the said board will receive evidence and testimony of the nature and extent of such injury. After hearing and considering the said testimony and evidence the board of assessors shall make such awards for such loss and damage, if any, as it may deem proper. The amount of the said awards shall be included in the assessment for the regulating and grading of the street in question, as a part of the expense thereof, and the said award, and the proceedings of the assessors in relation thereto, shall be subject to review by the board of revision of assessments." (Laws of 1901, chap. 466, § 951.)

This section was amended by chapter 483 of the Laws of 1912, after the adoption of the resolution changing the grade in 1912 and before the relator erected the building, by merely omitting from the second sentence thereof the words " subsequently to such establishment of grade," and by adding at the end of the section the following words: " This section shall be applicable to any and all claims for damages for change of grade now pending before the board of assessors of the city of New York, and not heretofore confirmed." Manifestly that amendment did not affect the claim of the relator, and, therefore, it is unnecessary to consider the object or effect thereof. By chapter 537 of the Laws of 1915 the section was amended by eliminating the provisions with respect to what should constitute the establishment of the grade. The phraseology of the provision conferring the right to damages was also changed by that amendment and by chapter 516 of the Laws of 1916 and by chapter 619 of the Laws of 1918, prior to the adoption of the change of grade in 1918 and to the construction of the viaduct pursuant thereto. The provisions of the section as amended in 1918, upon which the relator relies, are quoted in the petition to the court herein, as follows: "An abutting owner who has built upon or otherwise improved his property in conformity with the grade of any street or avenue established by lawful authority, and such grade is changed after such buildings or improvement have been erected, and the lessee thereof, shall be entitled to damages for such change of grade. * * * Except as herein provided, there shall be no liability for originally establishing a grade or for changing an established grade. Damages to such buildings and improvements shall be ascertained and assessed by the board of assessors in the manner hereinafter provided. * * * When any street shall have been regulated and graded, it shall be the duty of the board of assessors,

after the certificate of the completion and acceptance by the city authorities in charge of the work of such grading shall have been received by it, to cause to be published in the ' City Record ' and the corporation newspapers, twice a week for four successive weeks, a notice to all persons claiming to have been injured by the physical grading of such street to present their claims, in writing, to the board of assessors. Said notice shall specify a place where and a time when the said board will receive evidence and testimony of the nature and extent of such injury. * * * After hearing and considering the said testimony and evidence, and after viewing and inspecting the property claimed to have been injured, the board of assessors shall make such awards for such loss and damage, if any, as it may deem proper. No award shall be made, in any case arising after the taking effect of this act, unless a claim in writing therefor shall have been filed with the board of assessors within ninety days after the grading shall have been completed and accepted by the city authorities in charge of the work."*

The learned counsel for the appellants contends that the claim of the relator does not come within the statute, and that, therefore, it was properly disallowed by the assessors. In condemnation proceedings for the purpose of acquiring lands for opening streets, in accordance with maps previously filed, pursuant to law, it has been held that section 980 of the charter, as amended by chapter 394 of the Laws of 1909,† which authorized the commissioners to make a just and equitable assessment of the loss and damages that would accrue to the owner of abutting property in consequence of the intended regulation of the street, and like statutes, authorized such awards, notwithstanding the fact that the buildings were erected after the filing of the map, provided they were erected in good faith in order to enable the owner to use his property, where the condemnation proceeding was not promptly instituted after the filing of the map. (*Matter of City of New York* [*West 172d St.*], 167 App. Div. 807; *People ex rel. Bennett* v. *Dickey*, 148 id. 663. See, also, *Forster* v. *Scott*, 136 N. Y. 577.) The relator relies principally on these authorities. I am of opinion that they are not in point, for it was held in *Forster* v. *Scott* (*supra*) that an owner could not be deprived of the use of his property indefinitely pending the institution of a condemnation proceeding, after the filing of such a map, and the statutes considered in those decisions merely regulated the making of just compensation to which owners were entitled under the Constitution (Art. 1, § 6). Here the relator has

---

* Since amd. by Laws of 1920, chap. 786.— [REP.

† Repealed by Laws of 1915, chap. 606, §§ 1, 3. See Greater New York Charter, §§ 1001, 1010, as added by Laws of 1915, chap. 606.— [REP.

**792** People ex rel. Architects' Offices, Inc., v. Ormond.

First Department, June, 1922. [Vol. 201

no constitutional right to recover damages for this change of grade (*Sauer* v. *City of New York*, 90 App. Div. 36; affd., 180 N. Y. 27; 206 U. S. 536), and it is only entitled to such damages as have been expressly authorized by the Legislature. It was, therefore, entirely competent for the Legislature, in authorizing claims, to place such limitations thereon as it saw fit; and consequently it was perfectly proper for it to provide that any owner, building on his property after the grade of the street upon which the property abutted had been legally established, must, if he wished to claim damages, build according to the legally established grade, regardless of whether the street had been actually graded in accordance therewith or not, and that in the event of a subsequent change in the grade of the street, he should have no damages unless he originally built according to the legally established grade, and even in that event, that his damages should be estimated on the basis of the effect of the change of grade upon the market value of his property as thus improved. That is the rule that has been applied in similar cases. (*People ex rel. Sciarillo* v. *Hennessy*, 152 App. Div. 944; affd., 206 N. Y. 740; *People ex rel. Weiser* v. *Tucker*, 175 App. Div. 976; affd., 220 N. Y. 594.) In *People ex rel. Sciarillo* v. *Hennessy* (*supra*) the grade of the street was established by the filing of a map in 1889, and this was changed, but not materially, by the filing of another map in 1910. The relator built upon his property in 1891 according to the natural surface grade of the street as it had been used as a public street for upwards of twenty years. There was no opinion in the Court of Appeals, or in this court, which affirmed on *People ex rel. Flaxman* v. *Hennessy* (74 Misc. Rep. 166; affd., on opinion below, *sub nom. People ex rel. Massolles* v. *Hennessy*, 149 App. Div. 952); but the court at Special Term wrote an opinion (N. Y. L. J. Sept. 28, 1912) in which it was held that, in building, the relator was obliged to conform to the grade as shown by the map filed, notwithstanding the fact that the street had not been improved and graded in accordance therewith, and not having done so, he was not entitled to damages under section 951 of the charter, and *Effinger* v. *Hennessy*, decided by Mr. Justice Crane at Special Term, who wrote an opinion to the same effect, reported in the New York Law Journal, June 8, 1912, was cited and followed. In *People ex rel. Weiser* v. *Tucker* (*supra*) neither this court nor the Court of Appeals wrote an opinion, but an opinion was written at Special Term to the effect above stated, and is reported in the New York Law Journal for April 13, 1916. In that case the grade of the street was established by the filing of a map in 1895, and in 1901 the relator erected a building on his premises some six feet above the grade established

by the map.   The opinion shows that the court at Special Term held that the relator was not entitled to any damages under section 951 of the charter for the reason that he neither built according to the legal grade nor prior to the establishment thereof.

The learned counsel for the relator argues generally that the present statute, with the provisions relating to what constitutes the establishment of a grade eliminated, requires a different construction, and that the decisions to which reference has been made are no longer controlling.   With those provisions omitted, there still remain the provisions of section 442 of the charter (as amd. by Laws of 1903, chap. 409; Laws of 1913, chap. 329, and Laws of 1917, chap. 632) authorizing the establishment and change of grades, and of section 441 prescribing what length of user shall constitute the establishment of a grade without formal action.   While section 951 contained a specific definition as to what constituted the establishment of a grade, those provisions were deemed exclusive, and it was held that section 441 was inapplicable.   (*People ex rel. Flaxman* v. *Hennessy, supra.*)   The relator also relies, in this connection, on the decisions holding that the damages do not accrue until the actual physical change of grade (*People ex rel. Bennett* v. *Dickey, supra*); but I think those authorities are not controlling on the point now under consideration, which is, not when damages allowed by statute *accrue*, but whether the right to any damages has been conferred by the Legislature.

I am also of opinion that there is another ground, not argued, but upon which it might well be argued that the relator is not entitled to damages.   It is to be borne in mind that this statute does not give damages to abutting owners for a mere change of grade by which the surface of the street is taken below or above the surface of their premises.   If the relator's premises had not been built upon, it is quite clear that it would have no standing to claim damages.   The purpose of the statute, therefore, was to provide for awarding damages sustained by an abutting owner in consequence of a change in the grade of the street after he has improved his property, relying upon the legally established grade at the time of making the improvements; and on that theory, the relator, I think, sustained no damages in any event, for, as already observed, the change of grade in the middle of the street in no manner affected the grade, with respect to which the premises could be economically and advantageously improved.   In other words, it is quite evident that the relator's damages would be the same whether or not it had erected the building, and the Legislature has not provided for the allowance of such damages.   Since, however, this point has not been argued, and the evidence with respect

to the damages is not in the record, these observations are not to be deemed a decision on the point, and it will be left open for future consideration. As already stated, it appears that some awards have been made, and that also appears by a decision of this court in *103 Park Avenue Co.* v. *Exchange Buffet Corp.* (200 App. Div. 111), but that decision involved only the ownership of the awards made.

The order should be reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.